## STATE OF CONNECTICUT *v.* DAVID LEWIS
## (14034)

PETERS, C. J., SHEA, CALLAHAN, GLASS and BORDEN, Js.

Argued September 24—decision released December 17, 1991

*John R. Williams,* for the appellant (defendant).

*Rita M. Shair,* assistant state's attorney, with whom were *James G. Clark,* assistant state's attorney, and, on the brief, *Michael Dearington,* state's attorney, for the appellee (state).

CALLAHAN, J. This appeal arises from various rulings made in the course of the criminal trial of the defendant, David Lewis. The defendant was charged with one count of the crime of murder in violation of General Statutes § 53a-54a[1] and two counts of the

---

[1] General Statutes § 53a-54a provides: "MURDER. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonable-

crime of conspiracy to commit murder in violation of General Statutes §§ 53a-48[2] and 53a-54a. He was tried before a jury of twelve. The jury returned a verdict finding the defendant guilty of murder and of one count of conspiracy to commit murder, but acquitting him of the second conspiracy count. The defendant was sentenced to a term of fifty years on the murder count and to a concurrent term of twenty years on the conspiracy count, resulting in a total effective sentence of fifty years imprisonment. The defendant appealed from the judgment of conviction to this court. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On Sunday evening, September 18, 1988, the defendant and Trevor Pinnock, who were friends, were playing soccer with other participants at a field near Hillhouse High School in New Haven. The victims, Fitzroy "Soup" Pink and Kenneth Pascoe, although not participants in the game, were in the vicinity of the soccer field while the match was being played. At the con-

ness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a), on the question of whether the defendant acted with intent to cause the death of another person.

"(c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a unless it is a capital felony."

[2] General Statutes § 53a-48 provides: "CONSPIRACY. RENUNCIATION. (a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy.

"(b) It shall be a defense to a charge of conspiracy that the actor, after conspiring to commit a crime, thwarted the success of the conspiracy, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

clusion of the game, the defendant and Pinnock left the soccer field together and walked to the defendant's car, which was parked on County Street, adjacent to the soccer field. There the two men obtained handguns from inside the vehicle. Thereafter, both armed, they momentarily separated. Pinnock walked over to Pascoe, who was seated in his car, and pointed an automatic handgun at his head. Pinnock told Pascoe, "You're dead," and pulled the trigger, but his gun failed to fire. Moments later the defendant aimed his gun at Pink and, at a distance of approximately two car lengths, shot Pink three or four times, killing him. The defendant and Pinnock then ran from the scene together.

At the time of the defendant's arrest nearly one year later, the police discovered an identification card in the defendant's possession that bore Pinnock's name and photograph. When questioned about the card, the defendant asserted that he knew no one named Trevor Pinnock. He did, however, admit having shot and killed Pink.

On appeal, the defendant claims that his convictions should be set aside because: (1) there was insufficient evidence to support a conviction for the crime of conspiracy to commit murder; (2) the trial court erroneously admitted evidence that was seized in violation of the federal constitution; (3) the trial court improperly failed to suppress his confession obtained in violation of his constitutional rights; (4) the jury venire was provided with erroneous preliminary instructions concerning the reasonable doubt standard and the credibility to be accorded to the testimony of police officers; (5) the trial court failed to instruct the jury on self-defense; (6) the defendant's right to confront the witnesses against him was violated when his cross-examination of one of the state's witnesses was improperly limited; and (7) his rights to due process and to confront his

accusers were violated when the trial court required him to disclose information concerning his anticipated cross-examination of that witness prior to the state's direct examination.

I

The defendant first claims that the conviction of conspiracy to murder Pink was unsupported by the evidence. Specifically, he claims that there was insufficient evidence presented by the state to allow the jury to find beyond a reasonable doubt that he and Pinnock agreed to murder Pink. We disagree.

The standard of review of an insufficiency claim is clear. "We first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. We then decide whether, upon the facts thus established and the inferences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt." *State* v. *Jarrett,* 218 Conn. 766, 770–71, 591 A.2d 1225 (1991); *State* v. *Weinberg,* 215 Conn. 231, 253, 575 A.2d 1003, cert. denied,    U.S.    , 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990); *State* v. *Rollinson,* 203 Conn. 641, 665–66, 526 A.2d 1283 (1987); *State* v. *Garrison,* 203 Conn. 466, 471, 525 A.2d 498 (1987).

The defendant was charged with conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a. "To establish the crime of conspiracy under § 53a-48 of the General Statutes, it must be shown that an agreement was made between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. The state must also show intent on the part

of the accused that conduct constituting a crime be performed. . . ." (Internal quotation marks omitted.) *State* v. *Beccia,* 199 Conn. 1, 3, 505 A.2d 683 (1986). Further, the prosecution must show both that the conspirators intended to agree and that they intended to commit the elements of the underlying offense. Id., 4. To convict the defendant of the offense as charged, the jury was required to find that: (1) the defendant agreed with Pinnock to cause the death of another person; (2) at the time of the agreement, the defendant and Pinnock intended that the death be caused; and (3) the defendant or Pinnock committed an overt act in furtherance of the conspiracy by shooting and killing Pink. While the state must prove an agreement, "the existence of a formal agreement between the conspirators need not be proved" because "[i]t is only in rare instances that conspiracy may be established by proof of an express agreement to unite to accomplish an unlawful purpose." (Internal quotation marks omitted.) *State* v. *Ghere,* 201 Conn. 289, 299, 513 A.2d 1226 (1986).

The defendant asserts that the jury could not have rationally determined that his actions and those of Pinnock were in concert, the result of a conspiracy, rather than separate and distinct events. On the basis of the evidence and the inferences reasonably to be drawn therefrom, however, we conclude that there was sufficient evidence to support the jury's verdict. The state showed that on September 18, 1988, the defendant and Pinnock, who were friends, played soccer together and met with one another immediately after the soccer game. There was also evidence from which the jury could infer that the men did not play soccer while armed with handguns, and that together they obtained guns from the defendant's car at the conclusion of the game. Further, there was testimony to indicate that immediately after the men acquired the guns, Pinnock

approached Pascoe, threatened him with death, and pulled the trigger of his weapon, which fortunately failed to fire, and that within moments the defendant shot and killed Pink. The evidence disclosed that, following those events, the defendant and Pinnock fled the scene together. Further, the defendant's statement that he was not acquainted with Pinnock, despite the fact that he possessed an identification card bearing Pinnock's name and photograph, could well have been construed by the jury as a conscious attempt by the defendant to distance himself from his coconspirator. From the manner in which the murder of Pink and the apparent attempted murder of Pascoe were carried out, and from the defendant's later deception, the jury could have inferred that the crime was planned and agreed upon in advance of its occurrence. Once the jury found the existence of an agreement to kill Pink, the evidence, including the defendant's confession, clearly supported the finding that Pink was killed in furtherance of that agreement and that the defendant and his coconspirator intended to cause Pink's death. There was sufficient evidence from which the jury could conclude beyond a reasonable doubt that the defendant committed every element of the offense of conspiracy to commit murder.

## II

The defendant next argues that the identification card bearing the name and photograph of his alleged coconspirator, Pinnock, was seized from his wallet by the New Haven police department in violation of the fourth amendment to the federal constitution.[3] In support of his claim, the defendant asserts that he was

---

[3] Although the defendant has framed his claim under both the state and federal constitutions, we do not review his state claim because he has not provided an independent analysis under the state constitution. *State* v. *Joly,* 219 Conn. 234, 258 n.16, 593 A.2d 96 (1991); *State* v. *Mooney,* 218 Conn. 85, 89 n.5, 588 A.2d 145 (1991).

searched pursuant to his arrest on August 15, 1989, and that his wallet was seized and taken into the possession of the police at that time, but that the police did not complete the search of the wallet that revealed the identification card until two days after his arrest. The defendant argues that when the card was later discovered in the wallet, the officers had no search warrant and their conduct failed to satisfy any of the exceptions to the warrant requirement. We conclude that the defendant's claim has no merit.

In order to protect the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures"; U.S. Const., amend. IV; the United States constitution ordinarily mandates that the police obtain a search warrant before seizing the possessions of an accused. "[A] search conducted without a warrant issued upon probable cause is per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions. *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973), quoting *Katz* v. *United States,* 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) . . . ." (Internal quotation marks omitted.) *State* v. *Copeland,* 205 Conn. 201, 209, 530 A.2d 603 (1987). One of those exceptions is a search incident to a lawful arrest, which allows the complete search of a suspect at the time of his arrest.[4] Id.; see *New York* v. *Belton,* 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981); *United States* v. *Edwards,* 415 U.S. 800, 94 S. Ct. 1234, 39 L. Ed. 2d 771 (1974); *State* v. *Velez,* 215 Conn. 667, 672, 577 A.2d 1043 (1990).

Sergeant Francisco Ortiz of the New Haven police department testified that he and other officers arrested the defendant pursuant to an arrest warrant on

[4] The defendant does not claim that his arrest was unlawful.

August 15, 1989. Ortiz testified that at the time of the defendant's arrest, the defendant was "searched incidental to the arrest." Further, Ortiz stated that at the time of the defendant's arrest his wallet was discovered on his person and that Ortiz went through the wallet "[r]ight in front of Mr. Lewis when he was arrested." Ortiz testified that, while the defendant sat nearby, he discovered the identification card bearing Pinnock's name and photograph in the wallet. Although the defendant asserts that the wallet was searched "long after the arrest,"[5] he never so claimed at trial, and Ortiz' testimony directly contradicts that claim. Because Ortiz' testimony, which was apparently credited by the trial court, would render the search of the defendant valid as a search incident to a lawful arrest, we conclude that the trial court properly admitted the evidence.

## III

The defendant also claims that inculpatory statements he made to the New Haven police department were elicited in violation of his state and federal constitutional rights to counsel and his federal right against self-incrimination and that they should not have been admitted at trial. The defendant, who at the time of his arrest made such statements to the New Haven police, asserts that although he was properly apprised of his rights prior to the time he made those statements, the circumstances surrounding their elicitation indicate that he did not knowingly and intelligently waive his constitutional rights. Specifically, the defendant states that at the time of his interrogation, he refused to sign a written statement and refused to allow the officers to make tape recordings of the interview. He argues that the fact that he adamantly refused to allow his

---

[5] That claim is apparently based upon the fact that on August 18, 1989, the police removed the photographic identification from the wallet and completed a separate evidence inventory form bearing that date.

statements to be recorded but willingly provided unrecorded statements manifested a fundamental misunderstanding of his rights, which rendered the waiver of those rights constitutionally ineffective. We disagree.

After his arrest, the defendant was brought to the New Haven police department, where he was informed of his rights pursuant to *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Although the defendant orally waived his rights, he refused to sign his name to the waiver form. In the defendant's presence, two New Haven police officers signed the form and explained to the defendant that they were signing to indicate that the defendant had waived his rights. The defendant informed the officers that he would answer questions orally, but only if no recording of the conversation was made, and no notes were taken. Thereafter, in response to custodial interrogation, he made statements that the officers refrained from recording. Significantly, the defendant confessed that he had killed Pink out of fear because he had been told that Pink was a drug dealer who had threatened to kill him. Later, the defendant stated that weapons, ammunition and narcotics found in his girl friend's apartment at the time of his arrest belonged to him, and not to her. In order to exonerate his girl friend, he provided a taped interview on that topic but again refused to give a taped statement concerning Pink's murder.

First, the defendant claims that his rights to counsel were violated. "The sixth amendment accords the right of an 'accused' to the assistance of counsel in 'all criminal prosecutions'; this right attaches 'only at or after the time that adversary judicial proceedings have been initiated . . . .' *Kirby* v. *Illinois,* 406 U.S. 682, 688, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972); *United States* v. *Gouveia,* 467 U.S. 180, 190, 104 S. Ct. 2292, 81 L. Ed. 2d 146 (1984); *Brewer* v. *Williams,* 430 U.S.

387, 401, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977); *State* v. *Shifflett,* 199 Conn. 718, 726 n.1, 508 A.2d 748 (1986); *State* v. *Falcon,* 196 Conn. 557, 560–61, 494 A.2d 1190 (1985); *State* v. *Ferrell,* 191 Conn. 37, 44 n.10, 463 A.2d 573 (1983). 'It is this point, therefore, that marks the commencement of the "criminal prosecutions" to which alone the explicit guarantees of the Sixth Amendment are applicable.' *Kirby* v. *Illinois,* supra, 690." *State* v. *Jones,* 205 Conn. 638, 648, 534 A.2d 1199 (1987); *State* v. *Birch,* 219 Conn. 743, 594 A.2d 972 (1991). The time of the attachment of the right to counsel is no different under article first, § 8, of the constitution of Connecticut. *State* v. *Palmer,* 206 Conn. 40, 64, 536 A.2d 936 (1988).

The defendant claims that his criminal prosecution had commenced and that his right to counsel had attached when an information was filed in court in September, 1988, long before his arrest and interrogation in August, 1989.[6] Even if the defendant is correct and his right to counsel had attached, his ensuing statements would not be rendered inadmissible under the

[6] In the appendix to his brief, the defendant has included a copy of an information form and an affidavit that were signed by the state's attorney and a judge of the Superior Court on September 30, 1988, as part of an application for an arrest warrant. The defendant has also included an attached certification by a clerk of the court attesting that the information and affidavit were true copies of records of the court. That certification is dated February 23, 1989, before the defendant's arrest. Because there is no provision in our law providing for the filing of an information prior to the arrest of an accused, it is difficult to understand why the information would have been filed at that time. *State* v. *Crawford,* 202 Conn. 443, 448–49, 521 A.2d 1034 (1987). It appears that the certification may simply have been an affirmation that the documents were official as a prelude to and part of the process of sending the arrest warrant out of state. There is also an indication, however, that the information was not actually filed in court until August 15, 1989, after the defendant had been arrested and interrogated. To the extent that there was confusion concerning the issue, the defendant had the burden of perfecting the record for appeal and it is doubtful that he has met that burden. Practice Book § 4061. We have decided, nonetheless, to reach the merits of his claim.

sixth and fourteenth amendments unless he had invoked that right. *Patterson* v. *Illinois,* 487 U.S. 285, 108 S. Ct. 2389, 101 L. Ed. 2d 261 (1988). In *Patterson,* the United States Supreme Court held that the uncounseled postindictment statements of an accused were admissible against him despite the fact that his right to counsel had come into existence. "The fact that petitioner's Sixth Amendment right came into existence with his indictment, i.e., that he had such a right at the time of his questioning, does not distinguish him from the preindictment interrogatee whose right to counsel is in existence and available for his exercise while he is questioned. Had petitioner indicated that he wanted the assistance of counsel, the authorities' interview with him would have stopped, and further questioning would have been forbidden . . . ." Id., 290–91.[7] Because the defendant had not yet been arraigned and had adequately waived his right to counsel, as he did his *Miranda* rights, the fact that his rights to counsel *existed* would not require the suppression of his statements.

The defendant's second claim concerning his interrogation is that his federal right against self-incrimination under the fifth and fourteenth amendments was violated because the police failed to secure a knowing and intelligent waiver of his *Miranda* rights. As the defendant concedes, however, that issue was squarely addressed by this court in *State* v. *Barrett,* 205 Conn. 437, 449–51, 534 A.2d 219 (1987). In *Barrett,* we held that an accused had knowingly and intelligently waived

[7] The defendant argues that his state constitutional right to counsel provides broader substantive protection than the federal constitution in situations involving "police interference in the attorney-client relationship." He does not, however, provide any independent analysis under the state constitution to indicate that his state constitutional right to counsel would require the suppression of his statements notwithstanding the fact that he *did not invoke that right.* Accordingly, we will confine to the federal law our analysis of whether his right to counsel had become effective.

his federal right against self-incrimination despite the fact that he refused to commit anything to writing and would provide only oral statements to the police. While the defendant requested at oral argument that we reconsider our holding in *Barrett,* he provides us with no reasoned basis upon which to do so. Accordingly, his claimed violations of the fifth and fourteenth amendments to the federal constitution are unavailing.

## IV

The defendant next asserts that the trial court improperly instructed the jury by its preliminary instruction to the veniremen. Specifically, he claims that the jurors were improperly charged on the reasonable doubt standard and on the manner in which they should evaluate the credibility of police officer witnesses. We find no harmful error.

Although a judge in a criminal case may, in the exercise of sound discretion, provide a preliminary instruction to the jurors, such an instruction is not mandatory. *State* v. *Woolcock,* 201 Conn. 605, 618–28, 518 A.2d 1377 (1986). When preliminary instructions are given, they "do not supersede those given after evidence and arguments under our practice." Id., 623. In determining that the trial court's preliminary instructions in *Woolcock* did not require reversal we found it significant that "the court's final instructions to the jury fully covered all the applicable legal principles. . . . The jury was fully and properly instructed at the critical time, after all the evidence and after the arguments of counsel." Id., 627.

## A

The defendant first claims that the trial court improperly provided a preliminary instruction to the jury venire on the definition of reasonable doubt. Although the defendant does not claim that the court misstated

the law in any way, he claims that the instruction as given was incomplete and misleading.[8] The defendant asserts that because the court explained what reasonable doubt *is not* rather than what it *is*, the jury was not properly instructed on the definition of reasonable doubt, thus resulting in a violation of his right to a fair trial.

The Appellate Court recently considered a similar claim. *State* v. *Kelly,* 23 Conn. App. 160, 168–70, 580 A.2d 520, cert. denied, 216 Conn. 831, 583 A.2d 130 (1990), cert. denied,     U.S.   , 111 S. Ct. 1635, 113

[8] Preliminary instructions, all similar in nature, were given to a number of separate panels. An example is as follows: "The burden of proof in a criminal case is on the state. The state has made these charges against Mr. Lewis. And if one or more of them are to be proven, it's up to the state to prove them. The burden of proof in a criminal case which is on the state is to convince the jury of the guilt of the defendant beyond a reasonable doubt. You probably heard this morning the burden of proof that is used in a civil case, and it's referred to as proof by a fair preponderance of the evidence. That means in a civil case, one party suing another usually for money, automobile accident, personal injuries, falldown, products liability, breach of contract, whatever, a person has to prove whatever it is they may be trying to prove in that civil case has to prove it by what's known as a fair preponderance of the evidence. That generally means in a civil case that the evidence has to tip ever so slightly in favor of the person who's trying to prove whatever it is they're trying to prove. Now, that's the burden of proof in a civil case. This is a criminal case. The burden of proof which is on the state is a greater, a heavier burden of proof than the one required in a civil case. And it's referred to as proof beyond a reasonable doubt. Now, whereas that burden of proof beyond a reasonable doubt is a heavier burden than the one used in a civil case, proof beyond a reasonable doubt does not mean and does not go as far as proof beyond any possible doubt. It doesn't mean proof beyond a shadow of a doubt. It doesn't mean proof to a mathematical certainty. As they say, there's very little in life that can be proven beyond a possible doubt except death and taxes, and the law does not require the state to prove a defendant guilty beyond a possible doubt. What it requires is proof of guilt beyond a reasonable doubt. Now, the trial of a criminal case is not a contest between the state on one hand trying to prove the defendant guilty and the defendant, on the other hand, trying to prove himself innocent. It does not work that way. Half of that is true. The state is trying to prove the defendant guilty. That's the job of the state in a criminal case. The state has made these charges. If its going to be proven, it's up to the state to go ahead and prove it."

L. Ed. 2d 731 (1991). There, the defendant claimed that during its preliminary instructions to the jury venire, the trial court improperly charged on the reasonable doubt standard. The Appellate Court held: "The challenged remarks were temporally unconnected to the court's final charge and were totally subsumed by the final charge. It is not even certain that all of the jurors were present when the remarks were made. The remarks, therefore, could not have influenced the jury in its deliberations, nor could they have deprived the defendant of a fair trial." Id., 170.

Similarly, in the instant case, the court explained to the venire that the preliminary instructions would only briefly mention the basic principles of law upon which they would later be instructed in "somewhat more detail." The defendant concedes that at the close of the case, the jurors were given accurate instructions on the issue of reasonable doubt. Because the preliminary instructions were not inaccurate, and because the jury was fully and correctly instructed prior to deliberating, any tendency on the part of the preliminary instruction to mislead the jurors was sufficiently remedied, and the defendant was not deprived of a fair trial.

## B

The defendant also claims that the trial court's preliminary instruction concerning the credibility to be accorded the testimony of police officers was improper.[9] He asserts that because the trial court improperly

---

[9] Although a slightly different instruction was provided to each panel, the following illustrates the trial court's preliminary charge on police officer credibility: "In connection with credibility of police officers, police officers will probably testify, they usually do in criminal cases. Police officers are usually involved in criminal cases. The fact that a witness is a police officer, that fact in and of itself just because he or she happens to earn their living by being a police officer, does not entitle that witness to any greater credibility in the eyes of the jury or any lesser credibility in the eyes of the jury solely because of what they happen to do for a living. You

informed the jurors that they should not find police officers any less credible solely because they are police officers, the defendant was denied his sixth and fourteenth amendment rights to confront his accusers.

The instructions provided were preceded by the court's statement that the instructions were only preliminary, and that the jurors would be instructed in greater detail prior to deliberation. When the jurors were finally instructed, the court again charged on police officer credibility, and the defendant made no objection to the court's charge.[10] While it was not totally accurate for the court to inform the jury that it should not consider the nature of a police officer's employment when determining credibility, the preliminary instruction in this case did not mislead the jury. *State* v. *Woolcock,* supra; *State* v. *Kelly,* supra.

## V

Concerning the final instruction to the jury, the defendant claims that the trial court improperly failed

---

evaluate the testimony of a police officer witness the same way you evaluate the testimony of a doctor, lawyer, indian chief, whatever we might have. Look them over, size them up, decide whether or not you wish to accept the particular witness' testimony. Now, obviously, if a witness comes in with some particular skill or training and expertise in some field, you think it's pertinent in evaluating that witness' testimony then you've got a right to take all of that into consideration but you're not required to believe anybody's testimony solely because of what they happen to do for a living."

[10] The court finally instructed: "In this case there were various police officers who testified as witnesses. As I told you earlier, the testimony of a police officer is not clothed with any special sanctity merely because it happens to come from a police officer. A police officer who testifies in a case subjects his testimony to the same examination and the same tests as the testimony of any other witness. In weighing the testimony of a police officer you should consider his demeanor on the witness stand, his manner of testifying, the substance of his testimony, *any interest that he may have in the outcome of the case,* and any other factors that come in your mind which may affect the weight which you will accord to that witness' testimony. You're not required to believe the testimony of a police officer merely because he happens to be a police officer." (Emphasis added.)

to instruct on the elements of self-defense.[11] He argues that because the issue of self-defense had been raised at trial, his federal constitutional right to due process of law required that the jury be informed of its elements. We disagree and conclude that the trial court properly refused to instruct the jury on self-defense.

"If the defendant asserts a recognized legal defense and the evidence indicates the availability of that defense, such a charge is obligatory and the defendant is entitled, as a matter of law, to a theory of defense instruction." *State* v. *Fuller,* 199 Conn. 273, 278, 506 A.2d 556 (1986). The defendant's right to such an instruction is founded on the principles of due process. *Washington* v. *Texas,* 388 U.S. 14, 19, 87 S. Ct. 1920,

[11] Self-defense is defined in General Statutes § 53a-19, which provides: "(a) Except as provided in subsections (b) and (c) a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a), a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

18 L. Ed. 2d 1019 (1967); *State* v. *Miller,* 186 Conn. 654, 660–61, 443 A.2d 906 (1982); *State* v. *Rosado,* 178 Conn. 704, 707, 425 A.2d 108 (1979). Certainly, self-defense is a recognized legal defense. General Statutes § 53a-19; *State* v. *Miller,* supra, 661; *State* v. *Rosado,* supra, 708. Before an instruction is warranted, however, "[a] defendant bears the initial burden of producing sufficient evidence to inject self-defense into the case." *State* v. *Bailey,* 209 Conn. 322, 335, 551 A.2d 1206 (1988). To meet that burden, the evidence adduced at trial, whether by the state or the defense, must be sufficient to raise a reasonable doubt in the mind of a rational juror as to whether the defendant acted in self-defense. *State* v. *Cassino,* 188 Conn. 237, 243, 449 A.2d 154 (1982); *State* v. *Folson,* 10 Conn. App. 643, 647, 525 A.2d 126 (1987). Only when the issue has been sufficiently raised does the state "have the burden of disproving such defense beyond a reasonable doubt." General Statutes § 53a-12 (a); *State* v. *Miller,* supra, 661; *State* v. *Gelormino,* 24 Conn. App. 556, 561, 590 A.2d 476, cert. denied, 219 Conn. 911, 593 A.2d 136 (1991).

"When we are reviewing a trial court's failure to charge as requested, we must adopt the version of the facts most favorable to the defendant which the evidence would reasonably support." (Internal quotation marks omitted.) *State* v. *Havican,* 213 Conn. 593, 595, 569 A.2d 1089 (1990). In this case, the evidence adduced at trial was plainly insufficient to support the claim that the defendant acted in self-defense as set forth by § 53a-19. The only evidence that the defendant claims was relevant to the defense of justification was adduced through Ortiz. Ortiz testified that, in response to questioning, the defendant stated that he was afraid of the victim and that he killed the victim "because if he had not [the victim] would have somehow killed him." Ortiz also stated that the defendant appeared to believe that

the victim was a dangerous drug dealer, and appeared genuinely to fear the victim. That evidence, if credited, would have allowed the jury to believe that the defendant feared for his life. It would not, however, have allowed them to find that *at the time he killed the victim,* it was reasonable for him to believe that the victim was about to use deadly physical force or inflict great bodily harm, and that it was necessary to kill the victim to prevent such conduct. Even viewed in the light most favorable to the defendant, this evidence would not support a claim of legal justification under § 53a-19. The defense of self-defense does not encompass a preemptive strike. Accordingly, the trial court properly refused to charge the jury on the elements of justification.

## VI

Next, the defendant asserts that he was denied his federal right to confrontation when his cross-examination of one of the state's witnesses was improperly limited. He claims that while he was allowed to show bias on the part of Pascoe through evidence that Pascoe had entered into a plea agreement with the state concerning a crime that Pascoe had allegedly committed, he was prevented from asking Pascoe whether the original charge in Pascoe's case, which was reduced by the plea bargain, was murder. We find no harmful error.

The defendant produced evidence that Pascoe, at the time when he was designated as a witness for the state in this case, had been charged by the state with the crime of murder. He argued that he should be allowed to show that, as a result of the plea bargain, Pascoe had the murder charge reduced to conspiracy to commit assault. The defendant claimed that the disclosure that such a serious crime was bargained down to a lesser felony would allow the jury to infer that the witness felt indebted to the state and would testify against

the defendant with that debt in mind. The state disputed the fact that the witness had ever actually been charged with murder. Further, the state asserted that Pascoe's plea bargain was not tied to his testimony in the defendant's case but to another case and that an inquiry into the plea bargain would open this case to a substantial amount of tangential evidence. The trial court held that "the relevance of details of alleged bad act[s] or crimes of Kenneth Pascoe has not been established sufficient[ly] to get into that collateral type of inquiry."

The federal constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const., amend. VI. "[I]n the adversarial setting of a trial, the accused has a right under the confrontation clause 'to expose to the jury the facts from which the jurors, as the sole triers of fact and credibility, [can] appropriately draw inferences relating to the reliability of the [State's] witness.' *Davis* v. *Alaska,* 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974) . . . ." *State* v. *Kelly,* 208 Conn. 365, 375, 545 A.2d 1048 (1988); *State* v. *Crumble,* 24 Conn. App. 57, 65, 585 A.2d 1245, cert. denied, 218 Conn. 902, 588 A.2d 1077 (1991). One of the most useful means of effectuating this fundamental right is through the use of cross-examination. Particularly when the accused desires to cross-examine a witness concerning motive, interest, bias or prejudice, his cross-examination " ' "is a matter of right and may not be unduly restricted." *State* v. *Wilson,* 188 Conn. 715, 720, 453 A.2d 765 (1982).' *State* v. *Oehman,* 212 Conn. 325, 330, 562 A.2d 493 (1989) . . . ." *State* v. *Moye,* 214 Conn. 89, 94, 570 A.2d 209 (1990). "The confrontation right, however, is not absolute and is subject to reasonable limitation. *State* v. *Vitale,* 197 Conn. 396, 401, 497 A.2d 956 (1985)." *State* v. *Moye,* supra. We have consistently

held that when an accused has had the opportunity to elicit evidence of bias, not every limitation of the right to cross-examine is of constitutional dimension. The extent of cross-examination beyond that necessitated by the constitution rests within the discretion of the trial court. *State* v. *Jones,* 205 Conn. 638, 667–72, 534 A.2d 1199 (1987); *State* v. *Randolph,* 190 Conn. 576, 590–93, 462 A.2d 1011 (1983); *State* v. *Wilson,* supra, 720–21; *State* v. *Haskins,* 188 Conn. 432, 453–55, 430 A.2d 828 (1983); *State* v. *Luzzi,* 147 Conn. 40, 47, 156 A.2d 505 (1959).

Despite the trial court's ruling preventing the introduction of the title of the offense with which Pascoe had been charged, and the fact that it carried a life sentence, the defendant was able thoroughly to impeach Pascoe concerning his potential bias in favor of the state. While the name of the crime was not elicited, the fact that Pascoe was charged with a felony and the circumstances of his plea bargain were elicited by the defendant. The jury heard that, in May, 1989, when, at the New Haven police department, Pascoe identified Pinnock as the defendant's coconspirator, Pascoe was the target of a felony investigation and was awaiting trial. Further, the jury was aware that when he signed a photograph identifying Pinnock, Pascoe was incarcerated at the Whalley Avenue Correctional Center. It was also brought out that as part of his plea bargain with the state, Pascoe agreed to assist the state in an unrelated case in return for leniency in sentencing in his own case, and that at that point Pascoe was a designated witness for the state in its case against the defendant. Pascoe also stated that as a result of his plea, the charges against him were "reduced very substantially." He further admitted that although he was sentenced to five years, he actually served only eleven months pretrial detention, and served no time at all following the entry of his guilty plea.

In the light of the foregoing, the defendant was allowed sufficient cross-examination into the areas of prejudice, bias, motive and interest so as to satisfy the requirements of the constitution. Although the defendant was unable to elicit the fact that the original charge against Pascoe was murder, the defendant was able effectively to portray Pascoe as a biased witness. Therefore, the sixth and fourteenth amendments were satisfied.

Regarding the defendant's remaining claim of evidentiary error, we conclude that the trial court's ruling was improper. If requested cross-examination is not constitutionally mandated, the trial court, in its discretion, may determine the extent to which material can be elicited. *Delaware* v. *Van Arsdall,* 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986); *State* v. *Moye,* supra, 94. The trial court's discretion is not, however, unlimited. A criminal defendant may cross-examine a state's witness to the extent that his questions are relevant to an issue in the case and are not more prejudicial than they are probative. The defendant requested both to cross-examine Pascoe concerning whether he was originally charged with murder in the case in which he eventually pleaded guilty to conspiracy to commit assault, and to ask Pascoe what he understood to be the maximum sentence to which he would have been exposed on a murder charge. If the jury found that Pascoe believed that he was originally charged with murder and that that charge carried a severe penalty, the jury might have inferred that Pascoe was a biased witness, that he believed that he had received an excellent plea bargain from the state, that he felt indebted to the state, and that he would conform his testimony to serve the state's purposes.

We conclude that the trial court abused its discretion in ruling that the defendant's proposed cross-examination was improper because it would inject col-

lateral issues into the case. Outside the presence of the jury, the state disputed whether Pascoe had ever actually been charged with murder. It also suggested that, while the police may have originally pursued a murder charge, such a charge was unwarranted for reasons unrelated to any plea bargain. Those circumstances, however, do not warrant limitation of the defendant's cross-examination. The relevant issue was not the actual circumstances of the plea bargain Pascoe received, but Pascoe's belief about what those circumstances were. The defendant was entitled to explore the possibility that Pascoe believed that he had a murder charge significantly reduced in exchange for his cooperation with the state in this case. The state could properly have rebutted the defendant's cross-examination by questioning Pascoe about his knowledge of the original charge against him and his understanding of why it had been reduced. Through such redirect examination, the state might have demonstrated that Pascoe's testimony was unaffected by the circumstances of his plea bargain. That fact, however, was properly to be determined by the jury.

Having determined that the trial court acted improperly, we must determine whether the error was harmful. We conclude that it was not. "Because the defendant's claim does not involve the violation of a constitutional right, the burden rests upon him to demonstrate the harmfulness of the court's error." *State* v. *Cooper,* 182 Conn. 207, 212, 438 A.2d 418 (1980); *Chapman* v. *California,* 386 U.S. 18, 24, 26, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). To demonstrate harmfulness, the defendant must show that it is more probable than not that the court's action affected the result of his trial. *State* v. *Payne,* 219 Conn. 93, 102–103, 591 A.2d 1246 (1991); *State* v. *Vilalastra,* 207 Conn. 35, 47, 540 A.2d 42 (1988); *State* v. *Jones,* 205 Conn. 723, 732, 535 A.2d 808 (1988). Because the jury was pre-

sented with considerable evidence tending to show that Pascoe was biased in favor of the state, the defendant has not demonstrated that the exclusion by the trial court of this limited area of cross-examination probably affected the result of the trial.

## VII

Finally, the defendant claims that his federal rights to due process and to confront the witnesses against him were violated when the trial court required him to reveal the nature of prior bad acts to which he intended to refer in his cross-examination of Pascoe.[12] Because this disclosure was required prior to the state's direct examination, the defendant argues that the state was afforded the opportunity unconstitutionally to mitigate the impact of his cross-examination. We are not persuaded.

At trial the state filed a motion in limine requesting, inter alia, that the court order the defendant not to inquire into or present evidence concerning "[t]he names of crimes for which the witness Kenneth Pascoe has been convicted." Prior to the hearing on the motion, the state was aware that, in December, 1989, Pascoe had pleaded guilty to the felony of conspiracy to commit assault in the second degree and that, in June, 1988, he had been convicted of robbery in the second degree in New York. The state requested that the motion in limine be heard prior to the direct examination of Pascoe; the defendant objected, claiming that the appropriate time to hear the motion would be just prior to the cross-examination. The court in conformance with the state's request held the hearing prior to direct examination, inquiring of defense counsel

---

[12] In regard to his right to confrontation, although the defendant claims he is afforded "even greater protection by Article I, Section 8, of the Connecticut Constitution," he provides no independent analysis under that provision. Accordingly, we do not review that claim.

which prior convictions he planned to use to impeach the witness. As a result, defense counsel was required to reveal to the state that he intended to elicit the name of the robbery offense because it was probative of the witness' credibility, that he wished to elicit the fact that the conspiracy to commit assault conviction resulted from a plea bargain, and that there was evidence in the latter case that Pascoe had committed a murder. The court ruled that examination mentioning the robbery offense by name would be allowed and that examination pertaining to the fact that there was a plea bargain would be allowed, but that counsel could not question the witness concerning whether he was originally charged with murder in the case in which he pleaded guilty to conspiracy to commit assault. The court, over defense objection, then provided the state with a three minute recess to explain the limits of the ruling to Pascoe. On direct examination the state's attorney asked Pascoe two questions in relation to this issue. First, he asked if Pascoe had been convicted of robbery in New York in 1988. Second, he asked if Pascoe had been convicted of a felony in 1989 that in part involved a plea bargaining agreement with the state of Connecticut concerning the witness' cooperation in an unrelated case.

The defendant first claims that the trial court's ruling resulted in skewing the "entire discovery process," in violation of due process as interpreted by the United States Supreme Court in *Wardius* v. *Oregon,* 412 U.S. 470, 93 S. Ct. 2208, 37 L. Ed. 2d 82 (1973). In *Wardius,* the court struck down the conviction of an Oregon defendant because he was required by statute to inform the state of the place where he claimed to be at the time of the offense and the names and addresses of witnesses he intended to call to support that claim. The state was not required to provide the defense with any reciprocal discovery. The court stated: "We hold that the Due

Process Clause of the Fourteenth Amendment forbids enforcement of alibi rules unless reciprocal discovery rights are given to criminal defendants." Id., 472. The instant case differs from the scenario described in *Wardius*. Here, there was no such systemic bias in favor of the state. The state was aware of both of Pascoe's felony convictions, and any advantage it may have gained because of its limited preview of the defendant's cross-examination was inconsequential. While it would have been more proper to hold the hearing on the state's motion in limine following the state's direct examination, the resultant prejudice to the defendant did not deprive him of a fair trial.

Secondly, the defendant claims that the two questions concerning Pascoe's convictions asked by the state after previewing the defendant's anticipated cross-examination sufficiently "took the sting out of" that cross-examination so as to deprive him of his federal constitutional right to confront his accusers. Contrary to that assertion, however, it is evident that the defendant conducted a very thorough and lengthy cross-examination of Pascoe concerning his convictions and his plea bargain with the state. See Part VI, supra. The cross-examination he undertook was sufficient to satisfy the mandates of the federal constitution. *Delaware* v. *Van Arsdall*, supra; *Davis* v. *Alaska*, supra; *State* v. *Jones*, supra.

The judgment is affirmed.

In this opinion the other justices concurred.