[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner brings this petition for a writ of habeas corpus alleging that his criminal trial attorney, Timothy Aspinwall, was ineffective in assisting him in that he failed to call witnesses who gave statements to the police and others who had information concerning the event; he failed to use evidence of the rental car used in the incident by Ricky Smith; he failed to present evidence of the third party involvement of Timothy Rogers and Ricky Smith in the death of Kenneth Hazard; he failed to present evidence of the bad blood between Hazard and petitioner; he failed to move for a mistrial after Timothy Rogers testified that he had a .38 caliber handgun at the scene of Hazard's death; he failed to object to the State's characterization as to which witnesses were credible and which were not and the mischaracterization of the ballistic examination. He also claims actual innocence in the review of the evidence offered here and in his criminal trial.
The petitioner's arrest and conviction resulted from the shooting death of Kenneth Hazard on March 5, 1992 at the Oasis nightclub on Winchester Avenue in New Haven.
The petitioner subpoenaed his two criminal trial attorneys. Attorney Thomas Ullman testified that he was assigned the representation of the petitioner by the Public Defender and had CT Page 5839 filed several motions but determined that several witnesses who would be called had been represented by the Public Defender's Office and made a motion for the appointment of a special public defender, Attorney Timothy Aspinwall.
Aspinwall testified that he recalled very little about the case but he did remember that in his discussion with the petitioner, the petitioner said he had a good defense. When he asked him what it was he always said it will come up in the trial. The petitioner never disclosed what it was and as far as he knows it never came up in the trial. His basic defense was identification, since the firearms expert testified that there were bullets or casings fired from five different guns in the general crime scene.
James Stephenson, the firearms expert, who testified at the criminal trial was called but was excused because he had no additional testimony to give to his previous testimony. The transcript of the entire trial was marked as Respondent's Exhibit A and the petitioner had Stephenson's report and the transcript of his trial testimony marked as Petitioner's Exhibit 2.
Attorney David Gold testified he was not familiar with the petitioner's case but was familiar with the petitioner. He stated that in his prosecution of Jorge Alvarez for the murder of Eugene Mabery that the police through Det. Joseph Greene had been told by the victim herein, Kenneth Hazard, that the petitioner had shot Mabery. Greene was the officer who took Pamela McCrae's statement as to seeing Alvarez shooting Mabery. Greene's testimony concerning the Hazard statement was excluded as heresay. McCrae's statement, although she denied it during the trial, was offered under the Whelan principle. See Petitioner's
Exhibit 3.
The petitioner offered the reports of Det. Robert Benson who had collected the evidence at the crime scene, and the incident reports of Officer Keith Wortz and Det. Chris Grice concerning a car in which Timothy Rogers left the scene of the shooting,Petitioner's Exhibits 18, 4 and 5, respectively.
Det. Joseph Greene testified that he had known the petitioner from the case of the murder of Eugene Mabery in which Kenneth Hazard stated to him that the petitioner was seen shooting Mabery. The petitioner was never the prime suspect of that murder. He did take a statement from Paula McCrae whose statement CT Page 5840 identified Alvarez as the shooter. He also investigated the homicide of Hazard and took a statement from Bobby Kelly whose statement stated he witnessed the petitioner shooting the victim. He also looked for William Groom, an employee of the Oasis, who was a possible witness to the homicide. He does not recall interviewing the petitioner who fled the state and was first discovered to be in Pennsylvania. He did not tell McCrae to give a statement against the petitioner in the Mabery murder case.
The petitioner testified that he was represented by Aspinwall which representation was unsatisfactory. He told him to investigate Pamela McCrae, Wanda Mullings, and Det. Greene's involvement in both cases where the statements of two eyewitnesses were used under the Whelan principle when the witnesses later claimed that their statements were suggested. He requested that self-defense and third party culpability of Timothy Rogers be used as well as the confrontations with the Hazard family and the number of guns used at the scene according to the ballistics expert and that Ricky Smith's involvement because the rental car was located at his house. He felt that Aspinwall did not properly respond.
William Groom, Pamela McCrae nor Wanda Mullings were called as witnesses.
Perhaps the only difference between this habeas trial and the criminal trial is the testimony of the petitioner. As witness and advocate he was able to attack the police work of Det. Greene, the ineffectiveness of his counsel in denying him a claim of self-defense and to portray the scheme of Hazard and his friends to assassinate him. For good measure he wishes this court to revisit his claims decided by the Appellate Court as to evidence provided by the taped statement of Bobby Kelly pursuant to theWhelan principles, State v. Perry, 48 Conn. App. 193, 198 and the testimony produced of his flight as evidence of consciousness of guilt. Id. 200. That will not happen.
His claim against Det. Greene is that he used police coercion to obtain eye-witness statements which then can be used as evidence even when the witness claims they are not true. He attempts to buttress the Kelly statement and plea of the fifth amendment and Kelly's subsequent claim that it was given for consideration but without foundation to the statement given by McCrae in the Alvarez case when McCrae denied her statement was anything but police suggestion. However it is good police work to CT Page 5841 obtain such statements when memories are fresh and free from the corrupting influence of intimidation, money or threats. The fact-finders are free to weigh the reliability of the statement against other evidence. State v. Woodson, 227 Conn. 1, 20. Furthermore there was nothing in the testimony of Det. Greene here which would warrant this court in finding that his conduct in obtaining Kelly's statement was other than good police work.
The petitioner claimed that Aspinwall did not provide him with a claim of self-defense. Aspinwall's testimony was that he did not want to call Benjamin Jenkins as a witness. It appears obvious that the Jenkins brothers were witnesses brought to the petitioner's case by the petitioner and not for the purpose of evidence of self-defense but that the petitioner wasn't in the neighborhood at the time of the death of Hazard. Even if the court was to believe the petitioner's present testimony that Hazard said to him "you're going to die tonight" that would not warrant a charge of self-defense in taking an unarmed man's life.State v. Lewis, 220 Conn. 602, 619. The petitioner's testimony that Rogers came into the hall shooting at him is neither consistent with the other witnesses nor the physical evidence found in the hall, two gunshots. If it was Hazard's intent to assassinate the petitioner it would have been well for him to be armed rather than depend on friends at the time of his alleged threat. The most telling factor that self-defense in his criminal trial was not a claim is the petitioner's decision not to testify. Who then would give such evidence?
The petitioner has failed to produce any further witnesses to the murder other than himself. In his trial brief he states that witnesses testified that they saw the murderer leave in a blue car with the Altra rental car sticker on it. He didn't bring such witnesses to the habeas hearing. The focal point of Aspinwall's argument to the jury was that the shooter was Rogers and not Perry. The petitioner stresses the bad blood between himself and Hazard. This obviously would give the petitioner a motive for killing Hazard but not a right. Petitioner stresses that Rogers was the only one who admitted having a .38 revolver and the most likely evidence is that Hazard was killed by a .38 caliber bullet, therefore the killer was Rogers. The fact that Rogers fired a .38 caliber bullet does not prevent the petitioner from having one as well. There was nothing improper in the manner of State's Attorney Clark's summation.
A successful petitioner must show that there is reasonable CT Page 5842 probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Copas v.Commissioner, 234 Conn. 139 (1995); Strickland v. Washington,466 U.S. 668, 694. The petitioner has failed to prove counsel's representation fell below an objective standard of reasonableness. Id. 694.
There is no reasonable probability a new trial would produce a different result. The petitioner has given the same evidence in the criminal trial a new twist and added his own facts which are not corroborated by other evidence to give a favorable version for the petitioner and it still remains inconsistent with the physical evidence.
The petitioner has alleged actual innocence. Such a claim requires a higher standard than the Strickland test. Williams v.Commissioner of Correction, 240 Conn. 547, 549. He has not met that burden.
For the above reasons the petition is denied.
Thomas H. Corrigan Judge Trial Referee