******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ESPINOSA, J., concurring. Although I agree with the majority that the judgment of the trial court should be affirmed, I write separately to emphasize that the present case does not provide support for the new rule adopted by this court in *State* v. *Pond*, 315 Conn. 451, A.3d    (2015), namely, that in order for a defendant to be convicted of conspiracy in violation of General Statutes § 53a-48 (a), the state is required to prove that the defendant specifically intended that every element of the conspired offense be accomplished, even an element that itself carries no specific intent requirement. In my dissenting opinion in *Pond*, I observed that the new rule created by that decision would require the state to prove the existence of a formal or express agreement between the conspirators. Id., 497. The problem with that new rule, I explained, is that "[i]t is only in rare instances that conspiracy may be established by proof of an express agreement to unite to accomplish an unlawful purpose." (Internal quotation marks omitted.) *State* v. *Lewis*, 220 Conn. 602, 607, 600 A.2d 1330 (1991). The present case is one of those rare instances in which the state was able to provide evidence that the coconspirators actually sat down together prior to committing the crime that was the subject of the conspiracy and arrived at a "collective agreement" regarding its details, including the use of an airsoft pellet gun during the robbery. Accordingly, the present case illustrates the stringent burden now placed on the state by *Pond*.

Specifically, in the present case, the state was in the unusual position of having the testimony of a coconspirator, Chadwick Matzdorff, regarding a meeting that he had with the defendant, Kelly Ann Danforth, and her boyfriend, Anthony Flemke, to plan the robbery of the victims. During that meeting, Matzdorff testified, the three coconspirators discussed "how we would do it to get away with it" and, as a result of that discussion, they formulated a plan, which Matzdorff described as a "collective agreement" to rob the victims. The three discussed the plan in great detail. As described by Matzdorff, "[Flemke] was supposed to wait for [Matzdorff] at the Bolton Ice Palace in the parking lot—drop [Matzdorff] off before he got there. [Matzdorff] was gonna wait in the bushes for [the victims] to pull in. When they pulled in, [Matzdorff] was gonna jump out, rob 'em, run back to the Bolton Ice Palace, get in the car, and make an escape." When asked how he was "supposed to rob" the victims, Matzdorff responded that he had an "airsoft pellet gun." Matzdorff explained that during the course of their planning meeting in the kitchen of their home, Flemke had retrieved the gun from the bedroom that Flemke and the defendant shared, as well as a mask for Matzdorff to wear during the robbery. Accord-

ingly, the use of the gun during the commission of the crime was expressly contemplated by and agreed to by the coconspirators. It will be the rare case in which the state will be able to produce the proverbial "smoking gun" of conspiracy, as it was able to do here. The present case, therefore, in which the majority concludes that the state met its burden under *Pond* to prove that the defendant conspired to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (4) and 53a-48 (a),[1] does nothing to establish that the new rule that the majority established in *Pond* will be a workable one.

Accordingly, I concur.

[1] See footnotes 1 and 3 of the majority opinion for the text of General Statutes §§ 53a-134 (a) (4) and 53a-48 (a), respectively.