## State of Connecticut *v.* George Velez
### (13840)

Peters, C. J., Glass, Covello, Hull and Borden, Js.

Argued May 8—decision released July 17, 1990

*Timothy J. Sugrue,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Paul Murray,* senior assistant state's attorney, for the appellant (state).

*Brian J. Kornbrath,* with whom was *Jon L. Schoen-horn,* for the appellee (defendant).

GLASS, J. The defendant, George Velez, was charged with possession of narcotics with intent to sell, in violation of General Statutes § 21a-278 (b).[1] He thereafter filed a motion to suppress all items seized as a result of an allegedly illegal search of his person incident to his arrest. Following a hearing, the trial court denied the defendant's motion. The defendant then entered a conditional plea of nolo contendere, pursuant to General Statutes § 54-94a,[2] and on June 30, 1988, he was sentenced to a term of five years imprisonment.

[1] "[General Statutes] Sec. 21a-278. (Formerly Sec. 19-480a). PENALTY FOR ILLEGAL MANUFACTURE, DISTRIBUTION, SALE, PRESCRIPTION OR ADMINISTRATION BY NON-DRUG-DEPENDENT PERSON. . . .

"(b) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marihuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

[2] "[General Statutes (Rev. to 1987)] Sec. 54-94a. CONDITIONAL NOLO CONTENDERE PLEA. APPEAL OF DENIAL OF MOTION TO SUPPRESS OR DISMISS. When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the

The defendant appealed the trial court's ruling on his motion to suppress to the Appellate Court. On October 24, 1989, the Appellate Court held that the trial court should have granted the defendant's motion to suppress because the police had arrested him without probable cause. *State* v. *Velez,* 20 Conn. App. 168, 181–82, 565 A.2d 542 (1989). On November 29, 1989, this court granted the state's petition for certification, limited to the following question: "Did the Appellate Court err in concluding that the police had an insufficient basis for relying upon the information furnished by the informant and, therefore, lacked probable cause for the arrest and subsequent search of the defendant?"

The following facts were adduced at the suppression hearing. At approximately 8 p.m. on October 28, 1987, the Tri-Town Narcotics Task Force[3] executed a search warrant at the South Windsor condominium of Brian Cowell and Lydia Cameron. Cameron was interrogated at the condominium and told the police that Cowell had been dealing drugs for about one year and that his supplier was a man named George Velez from Hartford. After being taken to the police station, Cowell told the police that he was a drug dealer and that George Velez from Hartford was his supplier. Furthermore, Cowell told the police where, in his condominium, they could find his "stash" of two ounces of cocaine that he claimed to have purchased from the defendant earlier that day. The police then found Cowell's "stash" in a locked tool box located behind a fake wall in his closet. Cowell gave the police the combination to the lock on the tool box, and they found the cocaine inside it.

motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[3] The Tri-Town Narcotics Task Force is a regional drug task force whose members are drawn from the police departments of South Windsor, Manchester and Vernon.

At the request of the police, Cowell then agreed to set up a narcotics transaction with the defendant for later that night. Using a special "clear line"[4] at the South Windsor police department, Cowell placed a call to the defendant's home telephone. Cowell told the police that the person who answered the telephone told him that the defendant was not at home, but might be at DePortivo's, a social club in Hartford. Cowell then called DePortivo's, asked for the defendant, and after a short delay asked the person to whom he was speaking if he could purchase some "tickets."[5] The person on the phone told Cowell that he would call him back. Cowell told the police that the person with whom he had spoken was the defendant. When no return call was received, Cowell placed a second call to the defendant at the club. Following this call, Cowell told the police that the defendant would be appearing at a local 7-Eleven convenience store in approximately twenty minutes, with one ounce of cocaine to sell. Cowell also said that the defendant was having mechanical problems with his car, and therefore would probably arrive in another car. Cowell described the defendant as a forty to forty-five year old Hispanic male, who was pudgy, balding and sporting a beard. In addition, while Cowell was at the police station, the police at his condominium verified that the phone numbers that Cowell dialed were listed in his address book as those belonging to the defendant and to DePortivo's respectively.

The police set up surveillance at the 7-Eleven store in unmarked police cars, and Cowell remained in one of the cars that was parked across the street from the store. At the designated meeting time, a blue car containing two Hispanic males drove into the parking lot

[4] A "clear line" is a telephone line that has a phone number different from the general police department phone number and is answered with a simple "Hello."

[5] Cowell explained that a "ticket" represented one ounce of cocaine.

and parked in front of the store. Cowell told the officers that the blue car appeared to be that of the defendant's brother. The passenger in the blue car, who matched Cowell's description of the defendant, exited the car and walked into the store. Cowell tentatively identified this person as the defendant. One of the police officers then left his surveillance vehicle and entered the store to observe the suspect more closely. After satisfying himself that the suspect fit the description of the defendant, the officer returned to his surveillance post, observing along the way the registration number of the blue car. Using a public telephone next to his car, the officer called police headquarters and was informed that the blue car was registered to Felix Velez, whom Cowell had previously stated was the defendant's brother.

After purchasing some food items, the defendant emerged from the store and got back into the blue car, which began to drive out of the lot. An unmarked police car then blocked its path, and officers wearing badges on chains around their necks and shouting "police" began to converge on the car. The car was then quickly shifted into reverse and began to back up. An officer, however, reached into the car, opened the driver's side door, took the car out of gear, and pried the driver's hand from the shifter. Both occupants were then removed from the car and searched. The driver of the car was identifed as Felix Velez and the passenger identified himself as George Velez. The search of the defendant's person produced two packages of cocaine, one containing approximately one ounce and the other one or two grams.

On the basis of this evidence, the trial court found that the defendant had been "arrested" when the car was stopped and he was removed therefrom. It found further that, at the time of the arrest, the police had

probable cause to believe that the defendant was in possession of narcotics with intent to sell, and therefore the search of the defendant's person was lawfully conducted incident to the arrest. The state now argues on appeal that the trial court correctly determined that probable cause existed at the time of the defendant's arrest, and therefore, the Appellate Court should not have overturned the trial court's ruling. We agree.

"It is an established rule that a properly conducted warrantless search incident to a lawful arrest is not illegal. *State* v. *Cobuzzi,* 161 Conn. 371, 373, 288 A.2d 439 (1971), cert. denied, 404 U.S. 1017, 92 S. Ct. 677, 30 L. Ed. 2d 664 (1972); *State* v. *Collins,* 150 Conn. 488, 492, 191 A.2d 253 (1963); 4 Wharton, Criminal Evidence § 725 (13th Ed.). In order for the search to be legal, however, the arrest itself must be valid. *State* v. *Cobuzzi,* supra, 375; 4 Wharton, loc. cit. Section [54-1f] of the General Statutes authorizes a police officer to arrest, without a warrant, 'any person who such officer has reasonable grounds to believe has committed or is committing a felony.' 'Reasonable grounds' is to be equated with probable cause. *State* v. *Cobuzzi,* supra, 376; *State* v. *Wilson,* 153 Conn. 39, 41, 212 A.2d 75 (1965). Probable cause means more than mere suspicion. There must be facts and circumstances within the officer's knowledge, and of which he has trustworthy information, sufficient to justify the belief of a reasonable person that an offense has been or is being committed. *Beck* v. *Ohio,* 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964); *Brinegar* v. *United States,* 338 U.S. 160, 175–76, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949)." *State* v. *Penland,* 174 Conn. 153, 155, 384 A.2d 356, cert. denied, 436 U.S. 906, 98 S. Ct. 2237, 56 L. Ed. 2d 404 (1978).

"In *State* v. *Kimbro,* 197 Conn. 219, 233, 496 A.2d 498 (1985), we concluded that article first, § 7, of the

Connecticut constitution 'affords more substantive protection to citizens than does the fourth amendment to the federal constitution in the determination of probable cause.' Accordingly, we held that the determination of probable cause under article first, § 7, is to be examined under the two-prong analysis of the *Aguilar-Spinelli* test, rather than under the less strict 'totality of the circumstances' analysis set out in *Illinois* v. *Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527, reh. denied, 463 U.S. 1237, 104 S. Ct. 33, 77 L. Ed. 2d 1453 (1983). *State* v. *Kimbro,* supra, 235–36; see *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964)." *State* v. *Ruscoe,* 212 Conn. 223, 228, 563 A.2d 267 (1989), cert. denied, 493 U.S. 1084, 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990). Under this test, the sufficiency of the information that is derived from an informant depends upon the existence of (1) the informant's *"basis of knowledge"* about the information provided, and (2) the underlying facts establishing his *"veracity."* (Emphasis added.) *State* v. *Kimbro,* supra, 224–25; *State* v. *Morrill,* 205 Conn. 560, 566–67, 534 A.2d 1165 (1987). Furthermore, the reviewing court should pay great deference to the trial court's determination regarding the existence of probable cause. *State* v. *Kimbro,* supra, 222, 226, 232.

In the present case, we hold that the trial court was correct in concluding that there was sufficient evidence to support both prongs of the *Aguilar-Spinelli* test. The "basis of knowledge" prong "examines the information provided by the informant to determine if it 'relate[s] sufficient facts from which a judge reasonably could conclude that the [informant] based [his] allegations of criminal activity on sufficient underlying circumstances.' *State* v. *Delmonaco,* [194 Conn. 331,

339, 481 A.2d 40, cert. denied, 469 U.S. 1036, 105 S. Ct. 511, 83 L. Ed. 2d 401 (1984)]." *State* v. *Morrill, supra,* 566. Cowell's information was not based upon hearsay or unsubstantiated rumor. Rather, he clearly had first-hand information concerning the identity of his source. Therefore, the "basis of knowledge" prong was satisfied in this case.

As for the "veracity" prong, it may be satisfied by establishing that the informant was credible or that his information was reliable. Id., 567. Two common factors used to evaluate the reliability of an untested informant's tip are: (1) declarations against penal interest by the informant-declarant; and (2) corroboration of the information by police. *State* v. *Ferguson,* 185 Conn. 104, 113, 440 A.2d 841 (1981). Cowell's admission that he was a drug dealer and that he had purchased cocaine from the defendant earlier that day, as well as his statement concerning the location of his hidden "stash" of cocaine are all declarations against penal interest. See *State* v. *Just,* 185 Conn. 339, 368–69, 441 A.2d 98 (1981); *State* v. *Ferguson, supra,* 114–15. "Courts have generally subscribed to the view that admissions against penal interest by an informant 'carry their own indicia of credibility—sufficient at least to support a finding of probable cause.' *United States* v. *Harris,* 403 U.S. 573, 583, 91 S. Ct. 2075, 29 L. Ed. 2d 723 (1971); 1 LaFave, Search and Seizure § 3.3, p. 523. This principle has been applied by this court to find adequate verification of the reliability of an informant's naming of other participants in a crime where at least some significant details of his account of the crime itself have been corroborated independently . . . ." *State* v. *Daley,* 189 Conn. 717, 722, 458 A.2d 1147 (1983).

In the present case, the following aspects of Cowell's statement to the police were independently corroborated. The location at which Cowell claimed he had hidden the cocaine that he had allegedly purchased from

the defendant earlier in the day was accurate and verified by the police. Cameron corroborated Cowell's statement that he was a drug dealer and that his supplier was George Velez. The police discovered the name "George Velez" and phone numbers at which to reach him in Cowell's personal pocket address book found in his condominium. The police observed Cowell dialing these phone numbers, heard him ask for George Velez and listened as he arranged a drug transaction with a person whom he claimed was the defendant. The defendant arrived at the specified time at the purchase site as a passenger in a car that was not his own, as Cowell claimed he would. Cowell tentatively identified the defendant as George Velez, and the police independently verified that the defendant fit the description that Cowell had provided earlier. Finally, the police independently verified that the car in which the defendant arrived belonged to Felix Velez, who Cowell had previously stated was the defendant's brother. In sum, although it is a close call, we conclude that there was enough corroborative evidence available to the police to satisfy the "veracity prong" in this case.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reinstate the judgment of the trial court.

In this opinion the other justices concurred.