STATE OF CONNECTICUT *v.* LEON GREENE
(AC 22703)

Foti, West and McDonald, Js.

Argued October 28, 2003—officially released February 10, 2004

*Sheila A. Huddleston*, special public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Terence D. Mariani*, assistant state's attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant, Leon Greene, appeals from the judgment of conviction rendered by the trial court subsequent to his plea of nolo contendere to the charge of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (a). On appeal, the defendant claims that the court improperly denied his motion to dismiss and his motion to suppress certain information. In support of his claim, the defendant contends (1) that the information contained in the warrant application was both insufficient and stale, and therefore did not present a substantial factual basis to support the issuing judge's determination that probable cause existed, and (2) that the court's refusal to order the disclosure of the dates of the police informant's controlled purchases of the narcotics at issue violated the defendant's due process rights. We affirm the judgment of the trial court.

The following facts and procedural history are pertinent to our resolution of the defendant's appeal. On December 27, 2000, Sergeant Frank Koshes and Sergeant Scott O'Connor of the Waterbury police department filed an affidavit and application for a warrant to search the home and person of the defendant at 38 Santoro Street in Waterbury. The affidavit contained the following relevant information. In September, 2000, a confidential, reliable informant advised the officers that the defendant and his neighbor, Alfonso Madrid of 40 Santoro Street, were partners in the business of selling crack cocaine. The informant stated that drugs

were kept at both 38 and 40 Santoro Street, and that he had seen quantities for sale in both apartments. During the week of September 25, 2000, the informant advised the officers that the defendant had a supply of crack cocaine for sale. The informant met with the officers and was searched to ensure that he or she was not in possession of any narcotics or money. The informant was provided with Waterbury police funds to purchase drugs from the defendant in his home. Police surveillance was established outside of the defendant's apartment. The informant entered the defendant's apartment, purchased an undisclosed quantity of crack cocaine from the defendant and immediately returned to the officers with the drugs. During the week of December 23, 2000, the informant participated in a second controlled buy, this time in Madrid's apartment. While the sale was taking place, the defendant entered Madrid's apartment and provided additional crack cocaine to complete the transaction. That tip was corroborated by the fact that the surveillant officers witnessed the defendant leave his apartment and enter Madrid's apartment while the informant was inside. Following the controlled buy in Madrid's apartment, the informant reported that the defendant had a "stash" of crack cocaine for sale in his apartment as well. In addition to containing information about the two controlled buys, the application provided that within the first two weeks of December, 2000, the officers had received information from the New London police department that the defendant was bringing large amounts of cocaine from Waterbury to New London on a regular basis for distribution to New London narcotics dealers. The affiants, experienced narcotics investigators, also set forth their knowledge that in addition to drugs, narcotics dealers require cutting agents, scales, weapons, counter surveillance equipment and various other items to operate a narcotics distribution network effectively.

Upon presentation of the affidavit and application, a warrant was issued on December 27, 2000, to search the defendant and his home for narcotics and other specified items. The warrant was executed on December 28, 2000, and drugs, weapons and other items were seized from the defendant's apartment. The defendant was arrested and charged by substitute information with one count of possession of narcotics with intent to sell in violation of § 21a-278 (a) and two counts of criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1). The court denied the defendant's motion to suppress, and the state filed a second substitute information charging him with one count of possession of narcotics with intent to sell in violation of § 21a-278 (a). The defendant entered a plea of nolo contendere conditioned on his right to appeal pursuant to General Statutes § 54-94a and Practice Book § 61-6, and was sentenced to ten years imprisonment. This appeal ensued.

I

The defendant first claims that the court improperly denied his motion to suppress evidence obtained during the execution of the search warrant because the information contained in the warrant application was both insufficient and stale. We disagree.

Whether the court properly found that the facts submitted were enough to support a finding of probable cause is a question of law and is subject to plenary review on appeal. *State* v. *Buddhu*, 264 Conn. 449, 459, 825 A.2d 48 (2003). We uphold the validity of a search warrant if the affidavit at issue presented a substantial factual basis for the issuing judge's conclusion that probable cause existed. *State* v. *DeFusco*, 224 Conn. 627, 642, 620 A.2d 746 (1993). The issuing judge is entitled to draw reasonable inferences from the facts presented. *State* v. *Johnson*, 219 Conn. 557, 563, 594 A.2d 933

(1991). "When a magistrate has determined that the warrant affidavit presents sufficient objective indicia of reliability to justify a search and has issued a warrant, a court reviewing that warrant . . . should defer to the reasonable inferences drawn by the magistrate." (Internal quotation marks omitted.) *State* v. *Buddhu*, supra, 459.

Probable cause to search exists if (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction and (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched. *State* v. *DeChamplain*, 179 Conn. 522, 528–29, 427 A.2d 1338 (1980). In determining the existence of probable cause to conduct a search, the issuing judge assesses all of the information set forth in the warrant affidavit and should make a "practical, nontechnical decision whether there is a fair probability" that contraband or evidence of a crime will be found in a particular place. *State* v. *Barton*, 219 Conn. 529, 552, 594 A.2d 917 (1991). We view the information in the affidavit in the light most favorable to upholding the issuing judge's determination of probable cause. *State* v. *Duntz*, 223 Conn. 207, 216, 613 A.2d 224 (1992). "In a doubtful or marginal case . . . our constitutional preference for a judicial determination of probable cause leads us to afford deference to the issuing [judge's] determination." (Internal quotation marks omitted.) *State* v. *Johnson*, supra, 219 Conn. 565.

A

With regard to the defendant's claim that the information in the warrant application was insufficient, his supporting arguments are threefold: (1) the warrant application did not provide details "of the sort typically included in affidavits," including the price, quantity and

location of the drugs; (2) the application did not establish that the informant had personal knowledge that the defendant had a "stash" of drugs in his apartment during the controlled buy in December, 2000, and (3) the issuing judge should not have considered the information obtained from the New London police department because it did not provide the basis of knowledge, nor did it indicate where in Waterbury the defendant allegedly was keeping the drugs.

We address the defendant's supporting arguments in turn, viewing the allegations in the affidavit and all reasonable inferences drawn therefrom in the light most favorable to a finding of probable cause. See *State* v. *Duntz*, supra, 223 Conn. 216. With regard to the defendant's first supporting argument, we look to what was, as opposed to what was not, included in the warrant affidavit. The affidavit alleged that the informant had purchased drugs on a prior occasion from the defendant in his apartment. The affidavit further provided that the informant had participated in a controlled buy, at which time he again purchased drugs from the defendant in his home while police officers monitored the apartment from the outside. Moreover, the affidavit provided that less than ten days before the issuance of the warrant, the informant had purchased drugs from both the defendant and Madrid in Madrid's apartment during a second controlled buy. In the face of all of those representations, we conclude that the issuing judge's finding of probable cause was not unreasonable simply because the affidavit did not state the price, quantity or location of the drugs. The three drug transactions between the informant and the defendant provided the issuing judge with a reasonable basis to infer that drugs would again be found on the person or in the apartment of the defendant.

We next address the defendant's second and third supporting arguments that the issuing judge should not

have considered the statements regarding the defendant's "stash" of drugs and his drug business in New London. Regardless of whether the suspicions engendered by the tips would have independently justified the issuance of a warrant, "the magistrate was not required to disregard the tip[s] altogether, but could consider whether the tip[s] and the investigation together 'bridged the gap' between mere suspicion and probable cause." *State* v. *Johnson*, supra, 219 Conn. 565. Consequently, we conclude that the inclusion in the warrant application of those two pieces of information did not render the probable cause finding per se unreasonable.

## B

The defendant further argues that the warrant was invalid by asserting that the information contained in the warrant application regarding the two controlled buys was too remote in time from the actual search and was therefore stale. The defendant argues that due to the passage of time, there was no probable cause to believe that the items listed in the warrant would be found in his home or on his person on December 27, 2000. We disagree.

"The determination of probable cause to conduct a search depends in part on the finding of facts so closely related to the time of the issuance of the warrant as to justify a belief in the continued existence of probable cause at that time. . . . Although it is reasonable to infer that probable cause dwindles as time passes, no single rule can be applied to determine when information has become too old to be reliable. . . . Consequently, whether a reasonable likelihood exists that evidence identified in the warrant affidavit will be found on the subject premises is a determination that must be made on a case-by-case basis." (Internal quotation marks omitted.) *State* v. *Buddhu*, supra, 264 Conn. 465.

"The likelihood that the evidence sought is still in place depends on a number of variables, such as the nature of the crime, of the criminal, of the thing to be seized, and of the place to be searched. . . . [W]hen an activity is of a protracted and continuous nature the passage of time becomes less significant." (Internal quotation marks omitted.) Id., 465–66.

In this case, the information contained in the warrant affidavit regarding the two controlled buys was not so remote in time as to render a finding of probable cause unreasonable. The business of dealing in illegal drugs often involves a course of conduct that continues over a long period of time; *State* v. *Ralston*, 7 Conn. App. 660, 682, 510 A.2d 1346, cert. granted on other grounds, 201 Conn. 808, 515 A.2d 380 (1986) (appeal withdrawn October 31, 1986); and is usually considered to be a regenerating activity. *State* v. *Brown*, 14 Conn. App. 605, 615, 543 A.2d 750, cert. denied, 208 Conn. 816, 546 A.2d 283 (1988). The affidavit in this case alleged that the informant had knowledge that the defendant kept a supply of crack cocaine for sale in his home. The affidavit set forth the details of two controlled buys during which the informant purchased drugs from the defendant, one of which took place in the defendant's apartment and the other in Madrid's apartment no more than ten days prior to the issuance of the warrant. In addition, the affidavit set forth the experienced narcotics investigators' knowledge that narcotics dealers need a supply of drugs as well as other items used to cut, weigh, sell and protect the drugs. Viewing those facts in the light most favorable to upholding the determination of the issuing judge, we conclude that the judge could have reasonably inferred that the defendant was engaged in the continuous business of selling illegal drugs and used his apartment as a "secure operational base." (Internal quotation marks omitted.) *State* v. *Respass*, 256 Conn. 164, 180, 770 A.2d 471 (warrant less

likely to be stale when defendant's home is "secure operational base" rather than merely "criminal forum of convenience" [internal quotation marks omitted]), cert. denied, 534 U.S. 1002, 122 S. Ct. 478, 151 L. Ed. 2d 392 (2001). In light of those facts as set forth in the affidavit, the passage of time does not compel the conclusion that the information contained in the warrant affidavit was stale. We conclude that the issuing judge made a reasonable determination that probable cause existed on the basis of the information contained in the warrant application.

## II

The defendant next claims that the court improperly denied his motions to suppress and to dismiss in violation of his state and federal due process rights because the failure to provide him with the dates of the controlled buys deprived him of the ability to make the necessary showing to compel a *Franks* hearing.[1] The defendant advances his claim entirely with arguments that the court improperly denied his motions for disclosure. As such, we do not review his claim.

General Statutes § 54-94a provides in relevant part: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress or motion to dismiss, the defendant after the imposition of sentence may file

---

[1] Pursuant to *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), a defendant is entitled to challenge the veracity of an affidavit or testimony given in support of an application for a search warrant. *State* v. *Glenn*, 47 Conn. App. 706, 708, 707 A.2d 736 (1998), aff'd, 251 Conn. 567, 740 A.2d 856 (1999). If a defendant wants a *Franks* hearing to challenge the truthfulness of an affidavit underlying a warrant, he must (1) make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit and (2) show that the allegedly false statement was necessary to the finding of probable cause. *State* v. *Bangulescu*, 80 Conn. App. 26, 33, 832 A.2d 1187 (2003).

an appeal . . . . *The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. . . .*" (Emphasis added.)

Although the defendant's claim is cast as a challenge to the court's denials of his motions to suppress and to dismiss, his claim is, in reality, a challenge to the court's denial of his motion for disclosure.[2] The defendant himself rephrased his claim in his brief to this court and asserted that "the trial court's rulings *denying disclosure of the dates of the alleged buys* . . . violated [his] right to due process . . . ." (Emphasis added.) Such a claim is not reviewable pursuant to § 54-94a, nor is it a rare exception mandating review pursuant to *State* v. *Revelo*, 256 Conn. 494, 503, 775 A.2d 260, cert. denied, 534 U.S. 1052, 122 S. Ct. 639, 151 L. Ed. 2d 558 (2001).[3] Although the defendant requests *Golding* review[4] of his claim, to grant such review would be to render the restrictions of § 54-94a meaningless. As such, we will not review his claim.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[2] The defendant filed a motion for disclosure requesting that the court order the disclosure of "[a]ny and all documents, records and/or information pertaining to the specific dates" of the controlled buys. The court denied his motion.

[3] In *State* v. *Revelo*, supra, 256 Conn. 503, our Supreme Court stated that "in the absence of a showing of good cause, an appellate court should decline to review an issue that has not been raised in accordance with the provisions of § 54-94a. . . . [S]uch good cause is likely to be established only infrequently." The court concluded, however, that that case presented one of the "rare exceptions to the general rule of unreviewability"; id.; because the defendant's due process claim gave rise to an important issue and the undisputed facts of that case established a constitutional violation. Id., 503–504.

[4] See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).