## STATE OF CONNECTICUT *v.* TEUDI FLORES
(AC 33579)

Gruendel, Bear and Lavery, Js.

---

Argued May 22—officially released July 23, 2013

*James B. Streeto*, assistant public defender, for the appellant (defendant).

*Toni M. Smith-Rosario*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Roger Dobris*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BEAR, J. The defendant, Teudi Flores, after entering conditional pleas of nolo contendere, appeals from the judgments of conviction, rendered by the trial court in seven different files, of possession of a controlled substance with intent to sell in violation of General Statutes § 21a-277 (b), stealing a firearm in violation of General Statutes § 53a-212, home invasion in violation of General Statutes § 53a-100aa, robbery in the second degree in violation of General Statutes § 53a-135, and four counts of burglary in the third degree in violation of General Statutes § 53a-103. The court sentenced the

defendant to a total effective term of fifteen years incarceration, followed by ten years of special parole. On appeal, the defendant claims that the court improperly denied his motion to suppress. We affirm the judgments of the trial court.

The following facts are relevant to our consideration of the defendant's claim. Detectives John Cerejo and Angelo Stavrides of the Meriden Police Department applied for a search and seizure warrant for the third floor apartment located at 215 Camp Street in Meriden (apartment), averring, in relevant part, that the following facts established probable cause for the issuance of the warrant: "On January 27, 2010, Rafley Santiago was arrested by Meriden [p]olice for crimes related to being in possession of a stolen dirt bike, and various other motor vehicle charges. Santiago requested to speak with someone regarding information he had . . . . Stavrides notified Santiago of his *Miranda* rights,[1] which he waived [and] . . . Stavrides conducted an interview of Santiago . . . [which] was audio recorded, in a patrol interview area . . . . Santiago stated among other things that he regularly purchases marijuana . . . from 215 Camp Street, third floor apartment. He stated he has been making such purchases, for the last month or two . . . [and that] he purchases [one or two] bags of marijuana each time, from a male subject he only knew as 'John'. He stated he pays 'John' $10 for each bag of marijuana. . . . Each of the estimated [twenty] purchases Santiago made from 215 Camp Street, third floor apartment, all came from within that apartment, within the last two months. . . . Santiago's last purchase was made on Saturday, January 23, 2010." Cerejo and Stavrides also averred to their training and experience regarding people who are involved in the sale and use of narcotics and illegal

---

[1] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

contraband, and that they had probable cause to believe that the apartment was being used for the possession and sale of a controlled substance. They requested a warrant to search for items including marijuana, packaging materials, scales, drug paraphernalia, proof of residence, scanners, ledgers, and other items. On the basis of these facts, the court granted the application and issued the warrant, which the Meriden police executed on February 3, 2010.

The Meriden police searched the apartment and seized items of contraband, including two scales, forty-seven small glass jars, each containing a plant like substance that tested positive for marijuana, more than 100 small plastic bags, a silver semiautomatic firearm and proof of residence of the defendant and Maricel Sierra Flores. The marijuana was estimated to weigh one-half pound.

The defendant was arrested, read his *Miranda* warnings and transported to the Meriden Police Department, where he asked to speak with someone about "all kinds of things." While being interviewed, he admitted to a home invasion, armed robberies, burglaries and other crimes, relaying some very specific information to police. Several charges were filed against him, and additional warrants were secured and executed, resulting in additional charges being filed against him.

On October 7, 2010, the defendant filed a motion to suppress the majority of the evidence that the police had collected on the ground that the warrant was issued without probable cause and that it was based on stale facts. He also argued that his confession "was a direct result of the illegal search and seizure of his apartment" and that it, therefore, also should be suppressed. On December 7, 2010, the court, *Thompson, J.,* denied his motion to suppress, concluding that the original warrant application was supported by probable cause and

that, alternatively, there was sufficient attenuation between the original search and the defendant's voluntary statement.[2] Subsequently, the defendant, after entering conditional pleas of nolo contendere, was convicted of the charges previously set forth.

On appeal, the defendant claims: "The trial court erred in denying the defendant's motion to suppress, as the warrant was inadequate to establish probable cause, and his statements were causally based on the arrest based on the improper search and seizure." The defendant argues that the affidavit supplied with the warrant application did not establish probable cause because Santiago was unreliable and the police did not attempt to corroborate his allegations. We are not persuaded.

"Both the fourth amendment to the United States constitution and article first, § 7, of the state constitution require a showing of probable cause prior to the issuance of a search warrant. Probable cause to search exists if . . . (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . and (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched. . . . Although [p]roof of probable cause requires less than proof by a preponderance of the evidence . . . [f]indings of probable cause do not lend themselves to any uniform formula because probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules. . . . Consequently, [i]n determining the existence of probable cause to search,

[2] The attenuation doctrine provides that "evidence obtained by illegal means may nonetheless be admissible if the connection between the evidence and the illegal means is sufficiently attenuated or remote." Black's Law Dictionary (7th Ed. 1999).

the issuing magistrate assesses all of the information set forth in the warrant affidavit and should make a practical, nontechnical decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. . . . Probable cause, broadly defined, [comprises] such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred. . . .

"Furthermore, because of our constitutional preference for a judicial determination of probable cause, and mindful of the fact that [r]easonable minds may disagree as to whether a particular [set of facts] establishes probable cause . . . we evaluate the information contained in the affidavit in the light most favorable to upholding the issuing judge's probable cause finding. . . . We therefore review the issuance of a warrant with deference to the reasonable inferences that the issuing judge could have and did draw . . . and we will uphold the validity of [the] warrant . . . [if] the affidavit at issue presented a substantial factual basis for the magistrate's conclusion that probable cause existed. . . . Finally, [i]n determining whether the warrant was based [on] probable cause, we may consider only the information that was actually before the issuing judge at the time he or she signed the warrant, and the reasonable inferences to be drawn therefrom." (Citations omitted; internal quotation marks omitted.) *State* v. *Shields*, 308 Conn. 678, 689–91, 69 A.3d 293 (2013).

In *State* v. *Barton*, 219 Conn. 529, 544, 594 A.2d 917 (1991), our Supreme Court adopted the "totality of the circumstances test" for determining whether an affidavit sufficiently establishes probable cause for the issuance of a warrant. The court explained that when the police are relying on hearsay information and an affidavit is not supported by personal knowledge, the veracity or reliability of the informant is a critical factor. Id. In

assessing whether there had been probable cause for the issuance of a warrant in *Barton*, the court stated: "The first circumstance supporting an inference of 'veracity' or 'reliability' is the fact that the informant was not anonymous. The affidavit states that the informant provided his statement in person at police headquarters. Because his identity was known to the police, the informant could expect adverse consequences if the information that he provided was erroneous. Those consequences might range from a loss of confidence or indulgence by the police to prosecution for the class A misdemeanor of falsely reporting an incident under General Statutes § 53a-180, had the information supplied proved to be a fabrication. More significantly, however, the informant supplied the police with a sample of a substance that the police tested and confirmed to be marihuana. By entering the police station with the marihuana in his possession and by exhibiting the marihuana to the police, the informant rendered himself liable to arrest, conviction, and imprisonment under General Statutes § 21a-279. 'People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search.' *United States* v. *Harris*, 403 U.S. 573, 583, 91 S. Ct. 2075, 29 L. Ed. 2d 723 (1971); *State* v. *Daley*, 189 Conn. 717, 721–24, 458 A.2d 1147 (1983). Although the informant's motive may be no loftier than the hope of leniency on other charges or the promise of a payment, courts have thought 'that one who knows the police are already in a position to charge him with a serious crime will not lightly undertake to divert the police down blind alleys.' 1 W. LaFave, Search and Seizure (2d Ed. 1987) § 3.3 (c), p. 649." *State* v. *Barton*, supra, 550–51; see *State* v. *Johnson*, 286 Conn. 427, 438–40, 944 A.2d 297, cert.

denied, 555 U.S. 883, 129 S. Ct. 236, 172 L. Ed. 2d 144 (2008).

In the present case, we agree with the trial court that the information contained in the affidavit supporting the warrant application provided a substantial factual basis for the issuing judge's determination that probable cause existed to search the apartment for items related to the sale and possession of a controlled substance. The affidavit contained information supplied by Santiago, a named informant, who met with police on a face-to-face basis, where police could assess his credibility and demeanor. See *State* v. *Johnson,* supra, 286 Conn. 438; *State* v. *Barton,* supra, 219 Conn. 550–51. Adding to Santiago's reliability, he also made statements against his penal interest by specifically telling police that he regularly purchased marijuana from the apartment. See *United States* v. *Harris,* supra, 403 U.S. 583 ("[a]dmissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search"); see also *State* v. *Johnson,* supra, 438–39; *State* v. *Barton,* supra, 551. We therefore agree with the trial court's conclusion that there was probable cause to believe that items relating to the sale and possession of a controlled substance would be found at the apartment.

The defendant also claims that "the findings of fact in the search warrant were stale and did not support a finding of probable cause, and the [s]earch and [s]eizure [w]arrant for the [apartment] was stale at the time it was executed by the police." He further argues: "Analyzing the delay in the service of the warrant in light of the totality of circumstances, this [c]ourt should conclude that the validity of an already [bare-bones] search warrant is further weakened by the [eleven] day gap between the last purported purchase of drugs and the execution of the warrant." We are not persuaded.

General Statutes § 54-33c (a) provides in relevant part: "The applicant for the search warrant shall file the application for the warrant and all affidavits upon which the warrant is based with the clerk of the court for the geographical area within which any person who may be arrested in connection with or subsequent to the execution of the search warrant would be presented with the return of the warrant. *The warrant shall be executed within ten days* and returned with reasonable promptness consistent with due process of law and shall be accompanied by a written inventory of all property seized. . . ." (Emphasis added.) "Situations may arise where a search warrant executed within the time limits set by statute, may not be timely enough to meet the requirement of reasonableness and therefore would be violative of the defendant's fourth amendment rights. The question of whether a warrant was executed in a reasonable time is one to be determined according to the facts and circumstances in each case." (Internal quotation marks omitted.) *State* v. *Arnold*, 98 Conn. App. 492, 496, 909 A.2d 581 (2006), cert. denied, 281 Conn. 903, 916 A.2d 45 (2007).

"Although it is reasonable to infer that probable cause dwindles as time passes, no single rule can be applied to determine when information has become too old to be reliable. . . . Consequently, whether a reasonable likelihood exists that evidence identified in the warrant affidavit will be found on the subject premises is a determination that must be made on a case-by-case basis. . . . The likelihood that the evidence sought is still in place depends on a number of variables, such as the nature of the crime, of the criminal, of the thing to be seized, and of the place to be searched. . . . [W]hen an activity is of a protracted and continuous nature the passage of time becomes less significant." (Citation omitted; internal quotation marks omitted.)

*State* v. *Greene,* 81 Conn. App. 492, 499–500, 839 A.2d 1284, cert. denied, 268 Conn. 923, 848 A.2d 472 (2004).

Examining the facts and circumstances of the present case, we conclude that the court properly found that the warrant for the apartment was executed within a reasonable time. Santiago stated that he had purchased marijuana from the apartment approximately twenty times in December, 2009, and January, 2010, with the last purchase being made on January 23, 2010. The police applied for a warrant on January 27, 2010, and the court issued the warrant two days later, on January 29, 2010. Five days after the warrant was issued, the police executed it, well within the statutory time frame; see General Statutes § 54-33c; and only eleven days after the last purchase made by Santiago in a series of approximately twenty purchases made over a two month period. "[W]hen an activity is of a protracted and continuous nature the passage of time becomes less significant." (Internal quotation marks omitted.) *State* v. *Greene,* supra, 81 Conn. App. 500. After consideration of the facts and circumstances of the present case, we conclude that the passage of time between the last purchase by Santiago and the execution of the warrant was not unreasonable and that the court properly determined that the warrant was not based on stale facts.

The judgments are affirmed.

In this opinion the other judges concurred.