******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STATE OF CONNECTICUT *v.* TEUDI FLORES
## (SC 19207)

Rogers, C. J., and Palmer, Zarella, McDonald, Espinosa, Robinson and Vertefeuille, Js.

*Argued April 30—officially released October 20, 2015*

*James B. Streeto*, assistant public defender, for the appellant (defendant).

*Leonard C. Boyle*, deputy chief state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Toni M. Smith-Rosario* and *Roger Dobris*, senior assistant state's attorneys, for the appellee (state).

*Opinion*

McDONALD, J. The defendant, Teudi Flores, was convicted on conditional pleas of nolo contendere of possession of a controlled substance with intent to sell in violation of General Statutes § 21a-277 (b), home invasion in violation of General Statutes § 53a-100aa (a), robbery in the second degree in violation of General Statutes (Rev. to 2009) § 53a-135 (a), four counts of burglary in the third degree in violation of General Statutes § 53a-103 (a), and stealing a firearm in violation of General Statutes (Rev. to 2009) § 53a-212 (a). The defendant entered these pleas following the trial court's denial of his motion to suppress evidence of statements he made to the police following his arrest in which he confessed to these and other crimes.[1] The defendant appeals, upon our grant of certification, from the judgment of the Appellate Court affirming the trial court's judgments of conviction, arguing that his statements should have been suppressed as the product of an illegal search, in violation of the fourth and fourteenth amendments to the United States constitution,[2] because the warrant authorizing the search of his apartment was unsupported by probable cause. Specifically, the defendant argues that the affidavit in support of the search warrant application, which was based solely on hearsay statements made by a named informant, failed to establish probable cause because it did not provide facts from which the issuing judge could determine that the informant's tip was reliable. We disagree and, accordingly, affirm the judgment of the Appellate Court.

The record reveals the following undisputed facts.[3] On January 29, 2010, Detectives John Cerejo and Angelo Stavrides of the Meriden Police Department applied for a search and seizure warrant for the third floor apartment located at 215 Camp Street in Meriden (apartment). After reciting the detectives' training and experience as law enforcement officials, the affidavit in support of their application averred in relevant part: "On January 27, 2010, Rafley Santiago was arrested by Meriden [p]olice for crimes related to being in possession of a stolen dirt bike, and various other motor vehicle charges. Santiago requested to speak with someone regarding information he had, that would be of interest to [p]olice. . . . Stavrides notified Santiago of his *Miranda*[4] rights, which he waived. . . . Stavrides conducted an interview of Santiago. The interview was audio recorded, in a patrol interview area, at [p]olice [h]eadquarters. . . . Santiago stated among other things that he regularly purchases marijuana, approximately every [three] days, from [the] 215 Camp Street, third floor apartment. He stated [that] he has been making such purchases, for the last month or two. Santiago stated he purchases [one] or [two] bags of marijuana each time, from a male subject he only knew as 'John.' He stated he pays 'John' $10 for each bag of marijuana.

Santiago stated [that] 'John' has long hair, and many people frequent the apartment. . . . Each of the estimated [twenty] purchases Santiago made from [the] apartment, all came from within that apartment, within the last two months. Santiago stated [that] the last time he purchased marijuana [from the apartment] was [four] days prior to the date of the statement he made to . . . Stavrides. Santiago's last purchase was made on Saturday, January 23, 2010." (Footnote added.)

The affidavit also described the officers' knowledge regarding the conduct of individuals who are involved in the sale and use of controlled substances, including that, through their experience, they know that such persons routinely store illegal contraband in the location from which they base their sales.

A search warrant was issued on January 29, 2010, on the basis of the facts contained in the affidavit, and the warrant was executed on February 3, 2010. The search uncovered, inter alia, approximately one half of one pound of marijuana, packaging materials, two scales, and proof of residence of the defendant. The defendant was arrested and taken to police headquarters where he indicated that he wished to speak to the police about recent illegal activity in which he had been involved. After waiving his *Miranda* rights, the defendant confessed to multiple other crimes.

The defendant filed a motion to suppress the evidence of his confessions on the ground that they were the product of an illegal search because the warrant was issued without probable cause and was based on stale facts. He argued that his confessions were "a direct result of the illegal search . . . of [his] apartment," and therefore must be suppressed as fruit of the poisonous tree. The defendant further argued that, because his statements were made in close temporal proximity to his arrest and no intervening circumstances otherwise induced him to confess, his statements were not sufficiently attenuated from the original illegality so as to render them admissible. See *State* v. *Hammond*, 257 Conn. 610, 626–27, 778 A.2d 108 (2001) (evidence obtained by illegal means may nonetheless be admissible if connection between evidence and illegal means is sufficiently attenuated). The trial court denied his motion to suppress, concluding that the warrant application was not based on stale facts and was supported by probable cause. The court further concluded, alternatively, that there was sufficient attenuation between the original search and the defendant's voluntary statements so as to render his confessions admissible even if the search warrant was not supported by probable cause. The defendant thereafter entered conditional pleas of nolo contendere to the charges previously set forth.

The Appellate Court affirmed the trial court's judgments, concluding that the warrant was supported by

probable cause because the affidavit contained information supplied by a named informant, Santiago, who met with the police in person, so as to allow the police to assess his credibility and demeanor, and because Santiago made statements against his penal interest by telling police that he regularly purchased marijuana from the apartment. *State* v. *Flores*, 144 Conn. App. 308, 317, 72 A.3d 1202 (2013). The court concluded that these factors provided a "substantial factual basis" for the issuing judge's determination that probable cause existed to search the apartment for items related to the sale and possession of a controlled substance. Id. The court also rejected the defendant's contention that the warrant affidavit was based on stale facts because the warrant was executed only eleven days after Santiago's last purchase of marijuana, and, because Santiago indicated that he regularly purchased marijuana from the apartment over a protracted period, the minimal passage of time was not significant. Id., 317–19.

We granted the defendant's petition for certification to determine whether the Appellate Court properly affirmed the trial court's denial of the defendant's motion to suppress. *State* v. *Flores*, 310 Conn. 917, 76 A.3d 632 (2013). Contrary to the defendant's claims, which are the same as the claims he made in his motion to suppress, we agree with the state that the warrant was supported by probable cause and was not based on stale facts. We therefore need not reach the defendant's argument regarding the attenuation doctrine.

Certain well established legal principles guide our analysis of this issue. The fourth amendment to the United States constitution prohibits unreasonable searches and seizures and requires a showing of probable cause prior to the issuance of a search warrant. "Probable cause to search exists if . . . (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . and (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched. . . . Although [p]roof of probable cause requires less than proof by a preponderance of the evidence . . . [f]indings of probable cause do not lend themselves to any uniform formula because probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules. . . . Consequently, [i]n determining the existence of probable cause to search, the issuing [judge] assesses all of the information set forth in the warrant affidavit and should make a practical, nontechnical decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." (Citations omitted; internal quotation marks omitted.) *State* v. *Shields*, 308 Conn. 678, 689–90, 69 A.3d 293 (2013), cert. denied,      U.S.     , 134 S. Ct.

1040, 188 L. Ed. 2d 123 (2014). This determination is made "pursuant to a 'totality of circumstances' test." *State* v. *Velasco*, 248 Conn. 183, 189–90, 728 A.2d 493 (1999); see also *Illinois* v. *Gates*, 462 U.S. 213, 230–31, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).

This court has recognized that "because of our constitutional preference for a judicial determination of probable cause, and mindful of the fact that [r]easonable minds may disagree as to whether a particular [set of facts] establishes probable cause . . . we evaluate the information contained in the affidavit in the light most favorable to upholding the issuing judge's probable cause finding. . . . We therefore review the issuance of a warrant with deference to the reasonable inferences that the issuing judge could have and did draw . . . and we will uphold the validity of [the] warrant . . . [if] the affidavit at issue presented a substantial factual basis for the [issuing judge's] conclusion that probable cause existed." (Citations omitted; internal quotation marks omitted.) *State* v. *Shields*, supra, 308 Conn. 691; see also *State* v. *Velez*, 215 Conn. 667, 673, 577 A.2d 1043 (1990) ("[a] reviewing court should pay great deference to the trial court's determination regarding the existence of probable cause"). Notably, this court "will not invalidate a warrant . . . merely because we might, in the first instance, have reasonably declined to draw the inferences that were necessary . . . ." *State* v. *Barton*, 219 Conn. 529, 552, 594 A.2d 917 (1991). Finally, "[i]n determining whether [a] warrant was based [on] probable cause, we may consider only the information that was actually before the issuing judge at the time he or she signed the warrant, and the reasonable inferences to be drawn therefrom." *State* v. *Shields*, supra, 691.

When an affidavit is based on hearsay information from an informant, rather than on the personal observations of the affiant, "the veracity or reliability and basis of knowledge of [the informant] are highly relevant" in the issuing judge's analysis of the totality of the circumstances. (Internal quotation marks omitted.) *State* v. *Mordowanec*, 259 Conn. 94, 110, 788 A.2d 48, cert. denied, 536 U.S. 910, 122 S. Ct. 2369, 153 L. Ed. 2d 189 (2002). In cases where an informant is as yet untested, "this court has employed several methods by which to judge the information's reliability or the informant's credibility. Three of the most common factors used to evaluate the reliability of an informant's tip are (1) corroboration of the information by police, (2) declarations against penal interest by the informant-declarant, and (3) the reputation and past criminal behavior of the suspect." *State* v. *Ferguson*, 185 Conn. 104, 113, 440 A.2d 841 (1981); see also *State* v. *Toth*, 29 Conn. App. 843, 852–53, 618 A.2d 536 (first time informant not necessarily less reliable than previously tested informant where affidavit contains facts providing substantial basis for issuing judge to infer that informant's tip is

reliable), cert. denied, 225 Conn. 908, 621 A.2d 291 (1993).

In the present case, there is no dispute that Santiago was a first time informant and that the officers did not undertake any independent corroboration of his statement, nor did they have any information regarding the defendant's past criminal behavior that might bolster the reliability of Santiago's statement. Indeed, for these reasons, we recognize that these facts present a particularly close case as to whether the issuing judge reasonably could have concluded that the information relayed by Santiago was reliable, and that his statement therefore supported a finding of probable cause. In light of the deference we give to an issuing judge's finding of probable cause, however, because Santiago was a named informant who gave a statement against his penal interest, we agree with the state that the judge could have reasonably credited his statement.[5]

First, that Santiago was named in the affidavit and gave his statement in person at police headquarters can be significant in the determination of whether the information he provided was reliable. In such circumstances, "the police can observe the informant's demeanor to determine his . . . credibility, and the informant runs the greater risk that he may be held accountable if his information proves false." (Internal quotation marks omitted.) *State* v. *Batts*, 281 Conn. 682, 704, 916 A.2d 788, cert. denied, 552 U.S. 1047, 128 S. Ct. 667, 169 L. Ed. 2d 524 (2007); see also *State* v. *Johnson*, 286 Conn. 427, 438, 944 A.2d 297, cert. denied, 555 U.S. 883, 129 S. Ct. 236, 172 L. Ed. 2d 144 (2008); *State* v. *Hammond*, supra, 257 Conn. 622. Indeed, as this court has repeatedly recognized, "[t]he fact that an informant's identity is known . . . is significant because the informant could expect adverse consequences if the information that he provided was erroneous. Those consequences might range from a loss of confidence or indulgence by the police to prosecution for . . . falsely reporting an incident under General Statutes § 53a-180[c], had the information supplied proved to be a fabrication." (Internal quotation marks omitted.) *State* v. *Johnson*, supra, 438; see also *State* v. *Barton*, supra, 219 Conn. 550–51; *State* v. *Daley*, 189 Conn. 717, 725, 458 A.2d 1147 (1983). We disagree with the defendant's contention that naming Santiago in the affidavit provided no indicia of reliability because his statement relayed historical information. Because Santiago indicated that marijuana was being sold out of the apartment on a continuous basis, had the officers not uncovered any evidence of contraband, he could have expected adverse consequences for relaying false information.

More importantly, however, Santiago made a statement against his penal interest when he admitted to purchasing marijuana, not once, but on as many as

twenty occasions in the two months preceding the issuance of the search warrant, with the most recent purchase occurring only four days before he gave his statement to police.[6] This court has recognized that "[p]eople do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—*sufficient at least to support a finding of probable cause to search.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Barton,* supra, 219 Conn. 551, quoting *United States* v. *Harris,* 403 U.S. 573, 583, 91 S. Ct. 2075, 29 L. Ed. 2d 723 (1971) (plurality opinion); see also *State* v. *Jackson,* 162 Conn. 440, 450, 294 A.2d 517 (that informant's "statement is against his penal interest is . . . [a] substantial basis for crediting it"), cert. denied, 409 U.S. 870, 93 S. Ct. 198, 34 L. Ed. 2d 121 (1972). Notably, in *Barton,* this court concluded that an informant's statement against his penal interest provided sufficient indicia of reliability, even absent independent police corroboration, where the informant provided the police with a sample of marijuana that the informant claimed was being stored in the defendant's home. *State* v. *Barton,* supra, 550–51.[7] Although, unlike the informant in *Barton,* Santiago did not provide the police with physical evidence of his possession of marijuana, his statement was nevertheless against his penal interest and, therefore, carried with it its own indicia of reliability. Cf. *Graddy* v. *State,* 277 Ga. 765, 766, 596 S.E.2d 109 (2004) ("[i]n determining whether information qualifies as being contrary to a person's penal interest, 'a highly legalistic or technical interpretation of the informant's statement is not called for, as the fundamental question is whether the informant would have perceived his remarks as highly incriminating' "), quoting 2 W. LaFave, Search and Seizure (3d Ed. 1996) § 3.3 (c), p. 134. It is particularly relevant that Santiago admitted to criminal activity wholly unrelated to the charges pending against him, subjecting himself to possible prosecution for crimes in addition to those for which he was already in custody. See, e.g., *United States* v. *Tyler,* 238 F.3d 1036, 1039 (8th Cir. 2001) (informant's statement reliable where he "admitted to criminal activities beyond those of which the police already knew him to be guilty"); see also *United States* v. *Olson,* 408 F.3d 366, 371 (7th Cir. 2005) (informant's admission exposed him as more culpable than originally suspected); *Atkinson* v. *State,* 869 P.2d 486, 491 (Alaska App. 1994) (informant "went far beyond an admission of the misconduct for which he had already been apprehended").

Although it may be that Santiago's motivation for giving his statement was to curry favor with the police in the hopes that they would recommend that the charges pending against him be disposed of with leniency, we note that the affidavit does not reveal that any such

promise was indeed offered, such that it could render his statement to be in his best interest, notwithstanding the fact that he admitted to additional criminal activity. Indeed, the affidavit indicates that Santiago *initiated* his conversation with the officers, rather than offered the statements only in response to promises of leniency in exchange for information.[8] Moreover, this court recognized in *Barton* "that one who knows the police are already in a position to charge him with a serious crime will not lightly undertake to divert the police down blind alleys." (Internal quotation marks omitted.) *State* v. *Barton*, supra, 219 Conn. 551, citing 1 W. LaFave, Search and Seizure (2d Ed. 1987) § 3.3 (c), p. 649. The issuing judge could have reasonably concluded that Santiago would not have lightly chosen to mislead the police and thereby exacerbate his already compromised position. See *State* v. *Johnson*, supra, 286 Conn. 438 (known informant "could expect adverse consequences if the information he provided was erroneous," including "loss of confidence or indulgence by the police" [internal quotation marks omitted]); *United States* v. *Olson*, supra, 408 F.3d 371 (motive to curry favor does not render informant per se unreliable because "even informants attempting to strike a bargain with the police [have] a strong incentive to provide accurate and specific information rather than false information about [a defendant's] illegal activity" [internal quotation marks omitted]). Although the defendant contends that Santiago could have merely been repeating "street rumor" in the hopes that the information would turn out to be accurate and he would therefore be granted leniency, we think it unlikely that, if that were the case, Santiago would have felt it necessary to implicate himself in multiple crimes.

We recognize that some courts have adopted a bright line rule concluding that an informant's statement against penal interest, whether the informant is named or unnamed, is, without more, insufficient to support the conclusion that the informant is reliable. See, e.g., *United States* v. *Higgins*, 557 F.3d 381, 390 (6th Cir.), cert. denied, 558 U.S. 1084, 130 S. Ct. 817, 175 L. Ed. 2d 573 (2009); *United States* v. *Martin*, 615 F.2d 318, 325–26 (5th Cir. 1980).[9] We are more persuaded, however, by the approach of those cases, including our own, that have considered the content of such statements and the context in which they are made to determine whether the informant's statement against penal interest carries with it sufficient indicia of reliability so as to merit a finding of probable cause. See, e.g., *State* v. *Barton*, supra, 219 Conn. 550–52; see also *State* v. *Shipman*, 987 N.E.2d 1122, 1127–28 (Ind. App. 2013) (although not all statements admitting to criminal conduct are sufficient to establish informant's reliability, where informant under arrest for burglary admitted to theft and possession of marijuana, reliability established because he admitted to criminal conduct "under

circumstances in which the crimes otherwise would likely have gone undetected"); *Merrick* v. *State*, 283 Md. 1, 12–15, 389 A.2d 328 (1978) (citing cases from multiple jurisdictions wherein courts relied solely on informant's statement against penal interest in finding informant reliable). Indeed, the adoption of a bright line rule that would preclude an issuing judge from reaching a particular conclusion regarding an informant's reliability or the existence of probable cause would be inconsistent with the totality of the circumstances test, which requires that a judge assess the "particular factual [context]" of the case before it in order to "make a practical, nontechnical decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." (Internal quotation marks omitted.) *State* v. *Shields*, supra, 308 Conn. 690.

Although the affidavit in the present case undoubtedly would have been stronger had the officers corroborated any of the details from Santiago's statement, this court nevertheless should not substitute its judgment for that of the issuing judge where "[r]easonable minds may disagree" as to the weight to be given to an informant's statement. (Internal quotation marks omitted.) Id., 691. Here, where a named informant provided information against his penal interest, indicating his participation in criminal activity on multiple occasions in the recent past and which activity was wholly unrelated to the crime for which he was in custody, the judge reasonably could have credited that information as reliable and therefore supportive of a finding of probable cause.

Finally, we agree with the Appellate Court's conclusion that the warrant in this case—which indicated that Santiago recently purchased marijuana from the apartment and did so on a continuing basis over an extended period of time—was not based on stale facts, and we adopt the Appellate Court's reasoning on this issue in full. *State* v. *Flores*, supra, 144 Conn. App. 317–19. Thus, we conclude that the warrant was supported by probable cause and, accordingly, that the Appellate Court properly affirmed the trial court's denial of the defendant's motion to suppress.

The judgment of the Appellate Court is affirmed.

In this opinion ROGERS, C. J., and PALMER and VERTEFEUILLE, Js., concurred.

[1] On the basis of his confessions, the defendant was charged with thirty-five criminal offenses under seven different docket numbers. After entering pleas of nolo contendere to the offenses previously listed, the state entered a nolle prosequi as to the remaining charges.

[2] Although the defendant also raises a claim under article first, § 7, of the Connecticut constitution, he failed to separately brief that claim, and, accordingly, we deem it abandoned. See, e.g., *Barros* v. *Barros*, 309 Conn. 499, 507 n.9, 72 A.3d 367 (2013).

[3] The trial court adopted the facts set forth in the defendant's memorandum of law in support of his motion to suppress, finding that the state did not dispute those facts. We therefore rely on the facts set forth in the defendant's

trial court memorandum of law, as well as the search warrant affidavit, which the state introduced as an exhibit in the hearing on the defendant's motion to suppress.

[4] *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[5] In his brief to this court, the defendant contends that the affidavit in this case did not include facts from which the issuing judge could determine that Santiago was relating firsthand information, i.e., facts relating to Santiago's basis of knowledge. We note, however, that in his memorandum of law in support of his motion to suppress before the trial court, he conceded that the affidavit did describe the factual basis of Santiago's knowledge. In any event, Santiago's basis of knowledge was firmly established by his statement that he personally observed the presence of marijuana in the apartment on each occasion that he was there to make a purchase. Accordingly, we limit our analysis in this case to the question of whether his statement was sufficiently reliable to support a finding of probable cause.

[6] Although the legislature decriminalized possession of small amounts of marijuana in 2011; Public Acts 2011, No. 11-71, §§ 1, 11; see generally *State* v. *Menditto*, 315 Conn. 861, 110 A.3d 410 (2015); Santiago's statements in 2010 preceded this change, and, therefore, at the time, he could have been subject to incarceration had the state chosen to prosecute him on the basis of his admission.

[7] The defendant's reliance on this court's statement in dicta in *Skakel* v. *State*, 295 Conn. 447, 479 n.22, 991 A.2d 414 (2010), that this court has found "adequate verification of the reliability" of an informant's statement against penal interest "where at least some significant details of his account of the crime itself have been corroborated independently" does not support his contention that independent police corroboration is an indispensable requirement for a finding of probable cause. (Emphasis omitted; internal quotation marks omitted.) Furthermore, the authority on which the court in *Skakel* relied for this premise was *State* v. *Velez*, supra, 215 Conn. 674, which predated this court's decision in *Barton*, upholding a finding of probable cause based on an informant's tip that included a statement against penal interest and lacked independent police corroboration.

[8] We presume that officers provide all of the relevant facts in the affidavit to enable the issuing judge to undertake an independent evaluation of an informant's credibility, lest the state risk the possibility of a subsequent need for a hearing pursuant to *Franks* v. *Delaware*, 438 U.S. 154, 155–56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). See *State* v. *Grant*, 286 Conn. 499, 520, 944 A.2d 947 (defendant is entitled to *Franks* hearing to determine accuracy of facts included in affidavit where material fact was omitted with intent to make, or in reckless disregard of whether it made, affidavit misleading to issuing judge and omitted fact was material to determination of probable cause), cert. denied, 555 U.S. 916, 129 S. Ct. 271, 172 L. Ed. 2d 200 (2008).

[9] But see *Maxwell* v. *State*, 259 Ark. 86, 92, 531 S.W.2d 468 (1976) ("[w]e unhesitatingly find that the mere fact that [the informant's] statement was self-incriminating was an adequate basis for according reliability and credibility"); *Merrick* v. *State*, 283 Md. 1, 16, 389 A.2d 328 (1978) ("the probable credibility of the informant here was sufficiently shown on the sole basis of his statements against his penal interest").

We also note that in *Higgins*, the court concluded that a statement made by one who was already under arrest for possession of cocaine and who then named his supplier did not alone support a finding of probable cause. *United States* v. *Higgins*, supra, 557 F.3d 390. Although the court broadly stated that "the fact that the informant was known to the affiant and issuing magistrate and admitted a crime does not alone provide probable cause"; id.; courts in other jurisdictions have simply concluded that a statement such as the one at issue in *Higgins* was not a true statement against penal interest, and therefore not indicative of the informant's reliability. See, e.g., *State* v. *Spillers*, 847 N.E.2d 949, 956–57 (Ind. 2006) (where informant was caught with cocaine in his possession, revealing supplier did not subject him to additional criminal liability, and therefore was not true statement against interest). We need not decide whether we would agree with the result in *Higgins* were we faced with a similar factual scenario, but, as we explain, we agree with those courts that examine the substance and context of the statement itself to determine whether it supplies sufficient indicia of reliability.